**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **IN RE** | § | **CHAPTER 7** |
| | § | |
| **LEGENDARY FIELD EXHIBITIONS, LLC.** | § | **CASE NO. 19-50900-CAG** |
| | § | |
| | § | |
| **AAF PLAYERS, LLC;** | § | **CASE NO. 19-50902-CAG** |
| | § | |
| **AAF PROPERTIES, LLC;** | § | **CASE NO. 19-50903-CAG** |
| | § | |
| **EBERSOL SPORTS MEDIA GROUP, INC.;** | § | **CASE NO. 19-50904-CAG** |
| | § | |
| | § | |
| **LFE 2, LLC;** | § | **CASE NO. 19-50905-CAG** |
| | § | |
| **WE ARE REALTIME, LLC** | § | **CASE NO. 19-50906-CAG** |
| | § | |
| **DEBTORS** | § | |

**(SUBSTANTIVE CONSOLIDATION OF ALL 6 CASES, INTO ONE CASE, LEGENDARY FIELD EXHIBITIONS, LLC, CASE NO. 19-50900-CAG) JOINTLY ADMINISTERED UNDER CASE NO. 19-50900-CAG)**

**TRUSTEE'S APPLICATION TO COMPROMISE AND SETTLE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**

**THIS PLEADING REQUESTS RELIEF THAT MAY BE ADVERSE TO YOUR INTERESTS. IF NO TIMELY RESPONSE IS FILED WITHIN TWENTY-ONE (21) DAYS FROM THE DATE OF SERVICE, THE RELIEF REQUESTED HEREIN MAY BE GRANTED WITHOUT A HEARING BEING HELD. A TIMELY FILED RESPONSE IS NECESSARY FOR A HEARING TO BE HELD.**

**TO THE HONORABLE H. CRAIG A. GARGOTTA, U. S. BANKRUPTCY JUDGE:**

Randolph N. Osherow, Trustee, the duly appointed chapter 7 trustee in the above-referenced substantively consolidated cases ("Trustee") files this Application to Compromise and Settle Pursuant to Federal Rule of Bankruptcy Procedure 9019 (the "Application") and respectfully

shows:

## I.
## JURISDICTION AND VENUE

1.      This Court has jurisdiction to consider this objection pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b).

2.      Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## II.
## SUMMARY OF THE CASE AND SETTLEMENT

3.      Six entities operating as the Alliance of American Football ("**AAF**") suspended football operations on April 2, 2019 and filed their Chapter 7 cases two weeks later on April 17, 2019. During that interstice, former AAF players Colton Schmidt and Reggie Northrup ("**Schmidt**" and "**Northrup**") filed suit in California state court against the now-defunct AAF league, its founder Charles Ebersol, and its controlling director Thomas Dundon, seeking more than $600 million in actual and exemplary damages for themselves and a putative plaintiff class of more than 400 former AAF players. That case was removed, transferred, and ultimately referred to this Court where it pends as Adversary Proceeding No. 19-05053 (the "**Adversary**").

4.      Schmidt and Northrup alleged that the Debtors breached their three-year player contracts[1] and that the Debtors, Ebersol, and Dundon engaged in misrepresentations resulting in financial harm to them. They sought to certify a class of allegedly similarly situated former AAF players who, like them, signed the AAF's Standard Player Agreement. *See* Adversary Dkt. No. 87 (Second Amended Complaint).

5.      Schmidt and Northrup ("**Claimants**" in this context) filed a putative class proof of claim No. 214 (the "**Putative Class Claim**"). The Trustee objected on various merits and

---

[1] Schmidt and Northrup each signed and entered into a "Standard Player Agreement" with AAF Players, LLC (the "**Standard Player Agreement**").

procedural grounds [Dkt. No. 270] (the "**Claim Objection**"). The Court consolidated the Claim Objection with the Adversary. *See* Dkt. No. 276. During the bifurcated class discovery phase, it became clear that the Claimants and most or all other putative class members received only eight of the ten salary installments called for in year-one of their player agreements. Deposition discovery also indicated that plaintiffs were in contact with other former players who may have believed that they were not required to file a proof of claim considering the pending Putative Class Claim and Adversary. Discovery further demonstrated to the Trustee that the Debtors' estates would need to argue certain claims being asserted against Adversary defendants Dundon and Ebersol are estate claims.

6.      Although the bifurcated Phase 1 discovery dealt primarily with class issues, enough became clear about the merits for the Trustee to formulate a settlement with the named and putative class plaintiffs of their claims against the Debtors' estate and to avoid continued expense to the estate of extended litigation over the Putative Class Claim. This Application describes and seeks approval of a negotiated settlement that resolves the Claim Objection and all claims in the Adversary against the Debtors and Defendant Ebersol on the terms described in the Application. It does not resolve claims in the Adversary against Thomas Dundon.[2]

### III.
### PARTIES TO THE SETTLEMENT

7.   The Parties to the Settlement are:

a.   Randolph N. Osherow, Chapter 7 Trustee of the substantively consolidated bankruptcy estates of the Debtors Legendary Field Exhibitions, LLC, AAF Players, LLC, AAF Properties, LLC, Ebersol Sports Media Group, Inc., LFE2, LLC, and

---

[2] For the avoidance of doubt, the agreement further does not resolve claims against Dundon Capital Partners. Dundon Capital Partners is not a party to the pending Adversary.

We are Realtime, LLC (collectively called the "Debtors" and "Bankruptcy Cases").[3]

b. Colton Schmidt, Plaintiff and creditor, individually and on behalf of a creditor class comprising all players who executed a Standard Player Agreement and who were on an active roster of an AAF team on April 2, 2019, including players, if any, on injured reserve (the "**Player Settlement Class**").[4]

c. Reggie Northrup, Plaintiff, individually and on behalf of the Player Settlement Class.

d. Those members of the Player Settlement Class who do not opt out after notice pursuant to Federal Rule of Bankruptcy Procedure[5] 7023, as made applicable pursuant to Bankruptcy Rule 9014 and incorporating Federal Rule of Civil Procedure 23.

e. Charles Ebersol, the AAF's founder and one-time chief executive of Ebersol Sports Media Group, Inc. a debtor.

## IV.
## BACKGROUND FACTS

8.      Ebersol Sports Media Group, Inc. and several of its subsidiaries conducted combined operations under the trade name Alliance of American Football ("**AAF**"). The AAF

---

[3] *In re Legendary Field Exhibitions, LLC,* Case No. 19-50900; *In re AAF Players, LLC,* Case no. 19-50902; *In re AAF Properties, LLC,* Case No. 19-50903; *In re Ebersol Sports Media Group, Inc.,* Case No. 19-50904; *In re LFE2, LLC,* Case No. 19-50905; *In re We are Realtime, LLC,* Case No. 19-50906. These cases are collectively called the '**Bankruptcy Cases**."

[4] To avoid any doubt, the Player Settlement Class as defined is intended to encompass those players who by virtue of their continuation on an active team roster would have become entitled to receive ten installments to pay their $70,000 2019 season salary (wages) but only received eight as a result of the Bankruptcy Cases and deemed rejection of the Standard Player Agreements, in addition to their base salaries in the 2020 league year and 2021 league year.

[5] For convenience called "Bankruptcy Rules" and cited as "Bankr. Rule(s)."

operated as a professional sports football league with teams located in eight cities throughout the United States.

9.     The AAF hired professional staff and coaches with significant NFL experience. Its founders conceived the league as one that would operate professional football games interseason beginning the week after the Super Bowl and continuing through the week of the NFL draft.

10.     To complement its football product, AAF planned to develop an interactive fan experience through an "app" that would allow fans access to real time streaming and game generated data, player statistics, and other metrics. The app-based interactive product component AAF conceived depended on offering and aggressively promoting a quality football product capable of attracting and keeping fans. AAF also believed and intended that the app could eventually complement sports gambling.

11.     Ebersol Sports Media Group, LLC ("ESMG") directly or indirectly owned 100% of the interest in each of the other Debtors and through that structure owned each of the AAF's eight teams.

12.     Although the AAF arranged more than $200 million in financing through stock sales, convertible debt, and a convertible credit line in 2018, by late 2018 sporadic funding by the line of credit investor became problematic for the AAF, and the league sought new funding sources.

13.     In early February 2019, Thomas Dundon, a Texas billionaire and majority owner of an NHL hockey franchise, committed additional funding to the league and in exchange took full control of ESMG's board of directors and AAF's business decisions.

14.     With two weeks remaining in the AAF's season, Dundon, solely and personally,

caused ESMG and its subsidiaries to suspend football operations on April 2, 2019.[6]

15.     When AAF suspended football operations, Colton Schmidt and Reggie Northrup retained counsel, Abir, Cohen, Treyzon & Salo, LLP, a firm experienced in class action and employment litigation.[7]

16.     On April 10, 2019, Schmidt and Northrup filed a putative class action complaint in the San Francisco California Superior Court under Case No. CGC-19-575169.[8]

17.     On April 17, 2019, Dundon, solely and personally, caused ESMG and five subsidiaries (collectively, the "**Debtors**") to file their petitions for voluntary relief under Bankruptcy Code Chapter 7 (collectively, the "**Bankruptcy Cases**").

18.     Randolph N. Osherow was appointed as Chapter 7 Trustee in each Bankruptcy Case and continues to serve in that capacity.

19.     The Court substantively consolidated the Bankruptcy Cases into *In re Legendary Field Exhibitions*, Case No. 19-50900, and the substantively consolidated cases are being administered in 19-50900. [Docket No. 150].[9]

20.     Schmidt and Northrup's California state court lawsuit was removed, transferred,

---

[6]  Plaintiffs have alleged that Dundon's decision to suspend football operations and related conduct caused injuries to themselves and to putative class members.

[7]  Plaintiffs also retained experienced bankruptcy counsel, Katharine Battaia Clark, now with Thompson Coburn LLP.  Further, the Trustee is informed that over 100 putative class members have retained Class Counsel individually for their claims arising from the non-defunct league.

[8]  *Colton Schmidt, individually and on behalf of others similarly situated, Reggie Northrup, individually and on behalf of others similarly situated vs. AAF Players, LLC, A Delaware Limited Liability Company, d/b/a The Alliance of American Football., Thomas Dundon, an individual; Charles Ebersol, an individual, Legendary Field Exhbitions, LLC, a Delaware Limited Liability Company, AAF Properties, LLC, a Delaware Limited Liability Company, Eberson Sports Media Group, Inc. a Delaware Corporation, and Does 1-200, inclusive*, Case No. CGC-19-575169, In the Superior Court, San Francisco County, CA, Unlimited Jurisdiction.

[9]  All references to "Docket No." entries refer to the Court's Pacer docket in lead case No. 19-50900 unless otherwise indicated.

and referred to this Court where it currently pends as the Adversary.

21.　　The Trustee did not take any action to assume the Standard Player Agreement of any player before June 16, 2019, and such agreements were rejected and deemed breached at that time under 11 U.S.C. § 365(d)(1).[10] The Claimants and putative class members are regarded as pre-petition creditors, at least as to breach of contract claims under the Standard Player Agreement.[11]

22.　　On July 15, 2019, before the August 15, 2019 claims bar date, Schmidt and Northrup filed the Putative Class Claim (proof of claim No. 214), seeking for themselves and for a putative class of AAF players more than $673 million in actual and exemplary damages based on various contractual, quasi-contractual, and common law and statutory tort theories.

23.　　The Putative Class Claim addendum primarily focuses on the claims for alleged breach of the AAF's Standard Player Agreement,[12] which Schmidt and Northrup allege is the same for each AAF player. Their tort, quasi-contractual, and equitable claims are described in their original California state court class action complaint, attached and incorporated into the Putative Class Claim.

---

[10] This is the date sixty days after the Bankruptcy Cases commenced. Commencement of a voluntary case under Chapter 7 constitutes an order for relief. 11 U.S.C. § 301(d). Rejection constitutes a breach of an executory contract. 11 U.S.C. § 365(g); *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S.Ct. 1652, 1666 (2019). The Settling Parties disagree as to the timing of when Putative Class Members contracts were breached as a matter of law.

[11] *See* 11 U.S.C. § 365(g)(1).

[12] In addition to the "Standard Player Agreement," Schmidt and Northrup also each entered into an "Authorized Alternative League Release" with AAF Players, LLC (the "**Alternative League Release**") and a Standard Commercial License Agreement with Alliance Properties, LLC (a/k/a AAF Properties, LLC and herein called "**AAF Properties**") (the "**Commercial License**"). The Commercial License provided a mechanism for players to share fractionally in certain revenues AAF received attributable to the use of their likenesses. The Alternative League Release provided a mechanism for players that might obtain an NFL offer to be released from the Standard Player Agreement. Schmidt and Northrup contend that all members of their putative class of former players also entered into identical Alternative League Release and Commercial License agreements.

24.     The Putative Class Claim asserts that the breach of contract claims alleged are wage claims entitled to priority under Bankruptcy Code § 507(a)(4).[13]

25.     The Standard Player Agreement provides that a player would receive a "base compensation" rate in each of three distinct contract years payable in ten installments during the corresponding season.

26.     The Standard Player Agreement further provides:

(a). . . If the SPA is terminated after the beginning of the regular season, Base Compensation payable to Player will be reduced proportionately and Player will be paid the portions of his Base Compensation having become due and payable up to the time of termination.

27.     This scope and effect of this language is a subject of material dispute. Schmidt and Northrup contend based upon other contract language, for themselves and on behalf of the putative class, that this limitation cannot reduce their contractual rights (or rights of putative class members) to compensation because the suspension of league operations and the Bankruptcy Cases did not effect either a "skills termination" or a "morality termination" as defined in the Standard Player Agreements. They also contend, for themselves and on behalf of the putative class, that filing the Bankruptcy Cases could not by itself terminate their Standard Player Agreements.[14] They further contend that the putative class member's Standard Player Agreements were breached at the time the league missed the first two payments due upon their signed contracts, and/or were breached or repudiated when the AAF terminated operations on April 2, 2019.

28.     After a full hearing, the Court determined that filing the Putative Class Claim

---

[13] The computed amount Schmidt and Northrup contend is entitled to priority under the Bankruptcy Code totals $5,678,400.00. They computed this amount by multiplying the current § 507(a)(4) wage cap by the number of former players comprising the putative class members.

[14] The U.S. Supreme Court in *Mission Product Holdings, Inc. v. Tempnology, LLC*, 139 S. Ct. 1652, 1666 (2019) resolved that an executory contract is breached, but not terminated, by rejection in bankruptcy.

seeking a distribution from the estate waived any right to a jury trial. Plaintiffs sought leave to appeal the bankruptcy court's order on an interim basis under Case No. 5:20-cv-00104-OLG 1 in the district court for the Western District of Texas, which request was denied. *See* Dkt. No. 5 in Case No. 5:20-cv-00104-OLG l.

29.     The Trustee filed his Claim Objection initiating a Rule 9014 contested matter and raising substantive objections to Schmidt's and Northrup's individual claims and asserting that no class should be certified for litigation or claims purposes.

30.     On motion by Schmidt and Northrup, the Court consolidated the Adversary, the Putative Class Claim, and the Trustee's Claim Objection for discovery and hearing.

31.     The parties engaged in written discovery, including document production. The Trustee collected, reviewed, and produced nearly 25,000 pages of documents, including the Standard Player Agreement, Standard Commercial License, and Alternative League Release for each player signed to an AAF contract. The Trustee also recovered and produced during class discovery identifying and contact information for putative class members.[15]

32.     In addition, the Trustee's counsel engaged in an exhaustive review of the contracts and interviewed various AAF executives to understand the AAF's contracting practices. The Trustee's counsel also interviewed the attorney responsible for drafting the Standard Player Agreement.

33.     That work revealed that, although some "marquis" players negotiated and entered into additional and supplemental agreements regarding licensing and bonuses to enhance their

---

[15] In early 2020, the Trustee's counsel engaged in laborious work and interactions with a PEO provider to obtain and verify player mailing information to support the mailing of W-2 information to players. That work frequently revealed confirmed player mailing addresses different from the addresses on the company's records used to generate bankruptcy schedules. Most former players did not file an individual proof of claim before the July 5, 2019 claims bar date.

ultimate potential compensation, the Standard Player Agreement remained the same for each player in the Class, including base compensation. Each player, regardless of their "marquis" status, signed the same Standard Player Agreement. Each player owed AAF the same significant, material conditions, covenants, and obligations under the terms of the Standard Player Agreement. Debtors owed each member of the putative class the same significant, material, conditions, covenants, and obligations under the terms of the Standard Player Agreement including the same base compensation structure.

34.     The Trustee's work also revealed that players who were on an AAF team roster at the beginning of AAF's season on February 9, 2019 and who remained on that active roster up to and through April 2, 2019 (when the AAF suspended games) received eight periodic checks rather than the ten set forth under the Standard Player Contract as the base compensation for the first contract year.[16] The identity of these players is determinable from the records the Trustee was able to recover from third party custodians.

35.     Players who were on an active roster at the beginning of a season but were cut from a team (i.e., had their employment terminated) before April 2, 2019 appear to have received compensation for the time they were active as provided in the Standard Player Agreement.

36.     Schmidt, Northrup, and Dundon gave deposition testimony in the class certification discovery phase of the Adversary. That testimony revealed that Schmidt and Northrup are engaged and knowledgeable about their own claims and to an extent expressed personal knowledge about the potential contract and other claims of the putative class members.

37.     The Trustee asserts the deposition testimony also revealed that while some claims

---

[16] The Trustee urged in his Claim Objection that all payments for the first year base compensation were paid prepetition based on information then available; that contention appears to have been in error after a full investigation.

and contentions asserted against Dundon and Ebersol appear to be personal and subject to proof, other claims urge theories espousing derivative estate claims. The Plaintiffs deny this assertion.

38.     The Trustee extensively interviewed Charles Ebersol, who cooperated fully and candidly with the Trustee in developing a fuller understanding of the league operations.

39.     The Trustee has collected and sold the estate's physical property. Remaining property of the estate includes causes of action against third parties that the Trustee has and that the Trustee may assert.

40.     The current estate funds will not likely result in a meaningful distribution to the estate's general creditors, even if the Trustee prevails on several claim objections remaining to be filed.

41.     The Putative Class Claim and related Claim Objection implicate bona fide procedural and factual disputes, the resolution and trial of which, absent settlement, would almost certainly deplete available estate funds and make it impossible for the Debtors' estate to bring additional claims it may have.

42.     The Claimants are willing to compromise and settle disputes with the Trustee, for themselves and on behalf of the Player Settlement Class, in connection with the Putative Class Claim and the Adversary on the terms set forth in this Application.

43.     The Trustee has considered the totality of the circumstances of the Debtors' estate and the Bankruptcy Cases and concluded in his business judgment that entering into a settlement on the terms set forth in this Application is in the best interests of the estate.

44.     The Trustee and the Claimants have agreed to contemporaneously seek to conditionally certify a settlement class of certain former players and to approve the settlement of

their claims only against the Debtors and Ebersol, as described in this Application.[17]

## V.
## BASIC SETTLEMENT TERMS

45.    The Trustee and the Claimants, through their respective counsel, worked in good faith to craft an accommodation to fairly resolve their disputes regarding the Putative Class Claim and the Adversary as it relates to the Debtors (and Ebersol), both mindful of the prodigious cost of litigating in general and on a class action basis.

46.    Based on the Trustee's extensive investigation through counsel and good faith negotiation with the Claimants and Ebersol, these parties reached a compromise on the following basic terms to be memorialized in a written settlement agreement[18]:

    a.    The Trustee and the Claimants agree to request that the Court apply its discretion under Bankruptcy Rule 9014 to invoke Bankruptcy Rule 7023 to certify the Player Settlement Class[19] defined as:

> All players who signed a "Standard Player Agreement" with AAF Players, LLC and who were on an active AAF team roster as of April 2, 2019, including players, if any, on injured reserve. Specifically excluded from the Class are: (i) any person who filed a proof of claim in the Main Bankruptcy Case, except for the Putative Class Claim, on or before August 15, 2019; (ii) any Class Member who timely opted-out of the Class; (iii) Defendants and officers and directors of Defendants, (iv) any entity in which any Defendant

---

[17] The parties also are aware of the uncertain interplay between the bankruptcy claims process and the class action process made automatically applicable in adversary proceedings. *See* Ameneh Bordi, <u>Defendant Class Actions in Bankruptcy: A Practice Guide</u>, 71 N.Y.U. Ann. Surv. Am. L. 481, 486 (2016) (explaining developing views over utility of utilizing plaintiffs' classes in bankruptcy cases because both devices are self-aggregating).

[18] This summary of the Settlement Agreement is for descriptive purposes only and is not, and is not intended to be, a complete recitation of the material terms of the Settlement Agreement. This summary of the Settlement Agreement is qualified in its entirety by the terms and provisions of the Settlement Agreement. To the extent that there are any inconsistencies between the description of the Settlement Agreement contained herein and the terms and provisions of the Settlement Agreement, the Settlement Agreement shall control.

[19] The Trustee has objected that a litigation class cannot be certified for reasons described in his Claim Objection, but does not believe that those reasons prevent the certification of a settlement class and a related class claim for settlement purposes. A settlement class by its nature supposes that there will not be merits litigation; accordingly, the same Rule 23(b) questions do not arise in the settlement class context.

has a controlling interest; (v) the affiliates, legal representatives, attorneys, heirs, or assigns of any Defendant; (vi) any federal, state or local governmental entity; and (vii) any judge, justice, or judicial officers presiding over the Adversary and the members of their immediate families and judicial staff. [20]

b.  ABIR, COHEN, TREYZON AND SALO, LLP ("ACTS") and THOMPSON COBURN LLP will be appointed as class counsel for the Player Settlement Class ("**Class Counsel**").[21]

c.  Colton Schmidt and Reggie Northrup will be appointed as class representatives for the Player Settlement Class.

d.  The Putative Class Claim shall be allowed in the total amount of the Priority SPA Damages, plus the total amount of Excess SPA Damages (collectively, the "**SPA Damages**"), which total amounts shall be determined and distributed as follows:

   i.  Each member of the Player Settlement Class (i) who does not opt out and (ii) who timely completes and returns the claim form including all information required pursuant to the order approving settlement (and as further detailed in the class notice) will receive:

   1.  an allowed claim for $13,650.00[22] (the "**Priority SPA Damages**") entitled to priority under Bankruptcy Code section 507(a)(4) to be treated and disbursed pursuant to the Trustee's ordinary practices; and

   2.  a general unsecured claim for $180,000.00 (representing the second and third year base compensation under the Standard Player Agreement) (the "**Excess SPA Damages**"); provided, however, that the Excess SPA Damages portion of the claim will be subordinated to other general unsecured claims (not including the Putative Class

---

[20] For avoidance of doubt, this class definition *does not* include players who signed a Standard Player Agreement but were not selected to play on an AAF team and *does not* include players who were selected to a team but who were terminated or cut or exercised their option under the Alternative League Release agreement before April 2, 2019. This definition is intended to encompass all players whose contracts were rejected pursuant to the Bankruptcy Code except as otherwise provided. The parties disagree on the legal merits of such rejection and the effective timing of any breach, but this disagreement is not material to this Application.

[21] Specifically, the proposed class counsel are Boris Treyzon (lead counsel) and Jonathan Farahi of the ACTS firm and Katharine Battaia Clark, Nicole Williams, and John Atkins of Thompson Coburn LLP, experienced bankruptcy and class action counsel.

[22] The current cap on prepetition wage claims entitled to priority under 507(a)(4) is $13,650.00. The cap amount approximates, but is slightly less than, the $14,000.00 aggregate sum of two installments not paid to players in the Player Settlement Class as Base Compensation for play in the first contract year under the Standard Player Agreement.

Claim) filed before August 15, 2019 and any later filed claim approved and allowed by Court order, to the extent and in the amount such other claims are allowed claims and are not withdrawn.

ii. Notwithstanding the foregoing, Colton Schmidt and Reggie Northrup each will be allowed an additional general unsecured claim in the amount of $135,000 that is not subordinate to, but will receive *pro rata* distribution, if any, at the same time and with the same rank as other general unsecured claims. This is in recognition of the timely filing of their claims, and that the Lead Plaintiffs acted for and on behalf of the Player Settlement Class on their own time at their own expense.

iii. Each Player Settlement Class member who does not opt out shall be required to complete and file on the claims register or return to Class Counsel for prompt filing on the claims register a claim form on or before 60 days after the approved Class Settlement Notice is transmitted. In the event that a mailed Class Notice is returned as undeliverable, Class Counsel shall re-mail the Class Notice to the corrected address, if any, of the intended Class Member recipient as may be determined by Class Counsel through a search of a national database or as may otherwise be obtained by the Parties. In the event a Class Notice is undeliverable on the first attempt, the Class Member shall be provided additional time to file a proof of claim.

iv. The claim form will:

 a. Utilize a modified Bankruptcy Form 410, which form shall be (1) prefilled with each claimant's name, (2) total claim amount, (3) priority claim amount expressly stated, (4) be supplemented to include an express acknowledgement regarding (x) taxes and withholding, (y) attorney fees awarded to Class Counsel, and (z) the assignment of certain rights.

 b. Confirm no Player Settlement Class member will be required to attach his individual Standard Player Agreement to the claim form.

 c. Be accompanied by instructions regarding filling out and returning the claim form, along with the impact of failing to do so on claim treatment.

2. Each player's proof of claim must authorize the Trustee in distributing funds to also withhold from each Player Settlement Class member's distribution a percentage, which will not exceed 33% of the priority claim distribution amount, payable to be applied to the fees of Class Counsel as the Court on motion may approve.

     v. Player Settlement Class members who do not timely submit the claim form will not be entitled to a distribution of any amount as SPA Priority Damages, and such amount will treated as Excess SPA Damages as provided above.

e. For the avoidance of doubt, any amount distributed to a Player Settlement Class member will be subject to payroll taxes and withholding by the Trustee according to applicable law and to the same extent.

f. Player Settlement Class members who do not opt out, and regardless of whether they submit a timely claim form, will, in consideration of the settlement, assign, bargain, sell, and transfer, and by the Court's judgment be deemed to have assigned, bargained, sold, and transferred to the Trustee for the benefit of the Debtors' estate the "Settlement Class Assigned Claims." The Settlement Class Assigned Claims include:

     i. Any and all claims, rights, choses in action, and causes of action seeking recovery of damages specifically issuing from the failure of the AAF to pay amounts under the Standard Player Agreements against Dundon and any unnamed "Doe" defendant based on any theory of recovery, including without limitation any claims sounding in misrepresentation, fraud, contract, or equity;

     ii. Any and all claims, rights, choses in action, and causes of action based on any theory of recovery against any Debtor or against Ebersol.

Each Player Settlement Class member by virtue of the settlement assigns any claim the class member has against Dundon for failure of Dundon to fund, or to cause Dundon Capital Partners, LLC to fund the AAF based on promises to Ebersol and the Debtors, or that Dundon or any other person breached fiduciary duties owed to any of the Debtors. However, the Player Settlement Class members retain all claims against Dundon, even those for which Dundon's failure to fund (or failure to cause Dundon Capital Partners, LLC to fund) the AAF is a causal element, to the extent those claims are premised on damages for personal injury, mental anguish, or foregone economic opportunities due to being induced to play for or continue to play for the AAF, and not merely the inability of the AAF to pay promised wages or benefits.

g. For avoidance of doubt, any claims, rights, choses in action and causes of action of any individual Player Settlement Class member that are not Settlement Class Assigned Claims or that seek damages in excess of the total SPA Damages, are not assigned and transferred by this settlement to the Trustee and will remain property of Player Settlement Class members.

h. The Trustee and the Claimants will file in the Adversary an appropriate motion to

certify the Player Settlement Class defined in this Application and to approve the settlement for class purposes for which approval is sought in this Motion, including approval of an appropriate class notice that explains (i) the salient terms of the settlement, (ii) class members' obligation and deadline to return notice of any election to opt-out, (iii) class members' obligation to fully complete and timely return the claim form in order to receive any distribution as SPA Priority Damages, (iv) the contact information for the appointed class counsel, and (v) all deadlines by which class members must act. Such notice will provide for personal notice by mail and email where possible to Player Settlement Class members. Class Counsel will handle the notice and ancillary document process for which work Class Counsel shall be allowed an administrative claim in the amount of $8,000.

i.  Settlement Class Counsel will together submit an application for approval of attorneys' fees to be paid out of estate distributions to Player Settlement Class members, which will be agreed by the Trustee; provided, however, that attorneys' fees earned and paid on account of and out of SPA Priority Damages distributions shall not exceed 33% of any such distribution to a Player Settlement Class member.

j.  Ebersol agrees to provide to the Trustee all information known to him relevant to any claims the Trustee may have or bring against third parties and to cooperate and make himself reasonably available to the Trustee and the Trustee's representatives in connection with the Trustee's administration of the Debtors' bankruptcy estate. In exchange, the Trustee will covenant and agree that while any Bankruptcy Case is open, the Trustee will not directly or indirectly commence any action against Ebersol on account of any of the Settlement Class Assigned Claims or any other claims against Ebersol arising out of his involvement as a director, manager, or employee, as the case may be, with any Debtor. At such time as the last Bankruptcy Case is closed, provided Ebersol is not in default, the Trustee will release Ebersol of and from any such claims or suits.

k.  The parties will memorialize these terms together with other customary provisions in matters of this type in a comprehensive settlement agreement to be presented to the Court at or before the hearing on this Application.

l.  In the event the settlement reached and described in this Application is not approved by the Court or the settlement does not become final, then the parties will be returned to their respective statuses, rights, privileges, and claims existing immediately before this Application was filed as if the settlement had never existed.

## VI.
## GROUNDS FOR RELIEF

47.  Bankruptcy Rule 9019(a) provides in relevant part that "on motion by a trustee and

after notice and a hearing the court may approve a compromise or settlement." Settlements and

compromises are a normal part of the process of reorganization and should be approved where consistent with the Bankruptcy Code's priority scheme and reasonable in relation to the likely rewards of litigation. *Protective Comm. Four Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 428 (1968) (quoting *Case v. The Los Angeles Lumber Prod. Co.*, 308 U.S. 106, 130 (1939)).

48.     The decision whether to approve a particular settlement lies within the Bankruptcy Court's discretion. *American Can Co. v. Herpel (In re: Jackson Brewing Co.),* 624 F.2d 605, 607 (5th Cir. 1980). A reviewing court will uphold the approval of a settlement if it is the result of adequate and intelligent consideration of the merits of the claims, the difficulties of pursuing them, the potential harm to the debtor's estate caused by the delay, and the fairness of the terms of the settlement. *TMT Trailer Ferry, Inc.*, 390 U.S. at 434.

49.     Courts in the Fifth Circuit look to four factors in this analysis:

i.      the probability of success in the litigation, with due consideration for the uncertainty in fact and law;

ii.     the complexity and likely duration of the litigation and any intended expenses, inconvenience, and delay; and

iii.    the difficulties in collecting a judgment rendered from the litigation; and

iv.     all other facts bearing on the wisdom of the compromise.

*In re Jackson Brewing Co.*, 624 F.2d at 607-08.

50.     The Trustee believes that the proposed settlement is in the best interest of the Debtors' Chapter 7 estate because it results in a fair and equitable compromise after consideration of the aforementioned factors. Further, it resolves a legal dispute that would be both lengthy and costly, likely consuming the majority of limited estate assets on attorneys' fees and costs, without

benefit to any creditors.

**A.** **Probability of Success in the Litigation**

51.     Effectively aligned as a "defendant" in both the Adversary and the Claim Objection, the Trustee's probability of success depends primarily on whether ***any*** class or subclass of plaintiffs can be certified for litigation purposes and on the merits of the underlying contract, tort, and equity claims.

**(1)     Class Certification Matters**

52.     Bankruptcy Rule 7023 indisputably applies in the Adversary. Fed. R. Bankr. P. 7023 ("Rule 23 F.R.Civ.P. 23 applies in adversary proceedings"). Current federal jurisprudence embraces two countervailing views concerning application of Rule 7023 to proofs of claim. *Compare In re FIRSTPLUS Financial, Inc.*, 248 B.R. 60, 70-72 (N.D. Tex. 2000) *and In re Craft*, 321 B.R. 189, 192 (Bankr. N.D. Tex. 2005) (applying agency law principles to conclude that putative representatives are not agents where a class is not certified prepetition) with *In re American Reserve Corp.*, 840 F.2d 487 (7th Cir. 1988), *Gentry v. Siegel*, 668 F.3d 83, 88–89 (4th Cir. 2012) (adopting that view that a because a proof of claim objection initiates a contested case and Bankruptcy Rule 9014(c) permits bankruptcy courts to invoke Rule 7023 in contested cases, agency status is conferred on representatives retrospectively where the rule is invoked and a litigation class certified), *and In re Vanguard Nat. Res., LLC*, 17-30560, 2017 WL 5573967, at *4 (Bankr. S.D. Tex. Nov. 20, 2017) (permitting class proof of claim even though class was not yet certified and characterizing position that such proofs of claim are impermissible as "in the minority").

53.     The Fifth Circuit has not adopted either view as the controlling rule; Texas bankruptcy courts have adopted both approaches. It is therefore uncertain whether the Trustee

would prevail in urging that a class proof of claim filed before a class is certified is never proper.

54.     The Trustee also urged in his Claim Objection that Rule 7023, if a matter of discretion, should not be invoked because:

a.     the Claimants did not request the Court to apply the rule;[23]

b.     a litigation class was not certified prepetition; and

c.     invoking Rule 7023 for litigation would impede the efficient administration in the bankruptcy because the proof of claim could not enjoy prima facie validity as presented.[24]

55.     Contrary to the Trustee's belief at the time he filed the Claim Objection, it now appears that former players received only eight of ten installments due in the first contract year. It also appears that a substantial (but unknown) number of former players may not have received notice of the Bankruptcy Cases at the addresses provided to the BNC Notification Center.[25] Discovery also revealed other players in communication with Schmidt or Northrup may have refrained from filing individual claims based on a belief that the representatives were effectively their spokesperson. Many such individuals engaged the proposed class counsel after the bar date.[26] Many believed that Schmidt and Northrup would advance the group's claims and therefore avoided filing personal proofs of claim.

56.     These matters appearing through Phase 1 discovery undermine some of the contentions fundamental to the Trustee's procedural objections. Moreover, the Trustee is mindful of the reality that Rule 23 affords courts flexibility to create subclasses or certify a class only for

---

[23] *See* Claim Objection (Docket No. 270 at 21-22).

[24] *See id.* at 22-23.

[25] The Trustee was engaged for several months in efforts to get tax reporting information to many former players who did not receive W2's at the addresses used for purposes of mailing bankruptcy notices.

[26] The Trustee is informed that a number of these former players reached out to and engaged proposed class counsel.

particular issues. Fed. R. Civ. P. 23(c) (4-5). The fact that a litigation class could not be certified for trial of *every* claim and damage does not automatically mean the Court could not certify a litigation class for *any* claim or damage.

57.     The Trustee certainly might prevail in urging as in the Claim Objection that invoking Rule 7023 has little utility in the Claim litigation context, but the Court might also find efficient a more limited role for Rule 23, even in the litigation context.

58.     In the context of the settlement described in this Application, the class device would actually aid in efficient administration because it allows for settlement of the Claim Objection by establishing a class claim for settlement purposes and by efficiently and fairly establishing the process for determining the amount and timing of distribution to Player Settlement Class members. The methodology used to settle the Putative Class Claim/Claim Objection approximates certain contractual salary claims that matured when the Trustee determined he could not assume and attempt to assign the Standard Player Agreements and they were deemed rejected under Bankruptcy Code section 365(d)(1).[27]

59.     In both the Adversary and the Claim Objection, the Trustee asserted that if a class proof of claim can be allowed and the Court invoked Rule 7023, the Claimants' proposed litigation class for the claims encompassed would not meet the Rule 23(a) and Rule 23(b)(3) requirements.

60.     The Trustee's Claim Objection emphasized individualized questions of proof and choice of law that would interfere with an efficient trial of all of the claims asserted. The Trustee also questioned the impracticability of joinder in the bankruptcy context and challenged Rule 23(a)'s related commonality and typicality prerequisites.

61.     The Claimants did not formally respond to the Claim Objection because

---

[27] Such deemed rejected contracts are in law considered to give rise to a prepetition breach, and therefore a prepetition claim. 11 U.S.C. § 365(g)(1).

consideration of the Claim Objection was consolidated with the Adversary. The time has also not run for Claimants to file their motion to certify a litigation class. However, they will certainly point out that courts have held Rule 23(a)'s numerosity requirement satisfied by putative classes numbering fewer than the approximately 400 individuals involved here. Regarding commonality and typicality, the Claimants urge that all players signed the Standard Player Agreement, and the Phase 1 discovery appears to confirm that players received only eight of ten installments due for year-one base compensation before the agreements were deemed rejected under Bankruptcy Code section 365(d).

62.    Based on facts revealed in Phase 1 discovery, the Trustee must acknowledge regarding the contract-based claims a legitimate question that at least one common question exists in the sense as expressed in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

63.    Without conceding that a litigation class could be certified for all of the claims asserted, the Trustee has considered and acknowledges the differential risk factors regarding class certification for litigation of particular claims.

      **(2)    Merits of Claims Against Debtors**

64.    On the merits of the claims asserted, the Trustee believes that the statutory and common law tort claims will be very difficult to establish against the Debtors, which the Claimants dispute. Although the Trustee need not take a position on the plaintiffs' likelihood of success against the individual defendants, it is possible that Ebersol could assert rights under an indemnity agreement against the estate under some circumstances.

65.    Regarding the contract claims, deemed rejection of the Standard Player Agreements equates to pre-petition breach, and it appears likely that Schmidt, Northrup, and other former

players would have a claim for the two unpaid year-one installments of base compensation. Whether the Trustee could defeat a claim for unpaid base compensation for years two and three turns primarily on whether the Trustee is correct in arguing that the contract years are severable obligations. The Plaintiffs disagree and have argued the Standard Player Agreement is not severable for players who were not severable under the agreement's termination provisions.

66.     Regardless of the Trustee's belief in the strength of his arguments on this point, no question in litigation is certain. The contractual language leaves room for argument on both sides.

67.     For the purposes of this Application, the Trustee does not consider it necessary to address each claim and theory jot-for-jot. The facts, their contours, and legal effect central to the tort and common law claims are hotly disputed and their resolution in full-blown merits litigation will occur only in a distant and expensive future.

**B.      Complexity and Expense of Continued Litigation**

68.     Class action litigation is infamously expensive and time consuming for all involved. The same is true of the Adversary. The parties have been working for two years to prepare to present to the Court just the procedural certification question. That is especially true in cases where, as here, a complex combination of common-law, statutory, and contract claims are asserted and differentially applicable to multiple defendants differently situated.

69.     Full litigation of the claims and contentions will undoubtedly involve multiple depositions and extensive written discovery to multiple parties. Moreover, it is conceivable that the litigation would involve one or more appeals.

70.     In addition, the litigation of the complicated mix of issues in this litigation diverts the Trustee's resources from continuing to investigate and potentially pursue claims against certain officers and directors related to the AAF's financing and against insurers. The Trustee continues

to investigate those matters and intends to bring suits if warranted.

## C.      Other Factors Bearing on the Wisdom of Settlement[28]

71.     The settlement proposed solves many issues in the bankruptcy. It recognizes what discovery revealed—that only eight of ten base compensation installment were made in contract year one—and treats these claims according to their tenor and priority under Bankruptcy Code 507. It addresses the fact revealed in discovery that it is unlikely that all former players received notice of the bankruptcy through the BNC mailing.

72.     The settlement also acknowledges the larger risk of issue-specific certification on the contract issues and recognizes that deemed rejection of the contracts gives rise to a deemed breach and claims for rejection damages.[29]

73.     Although the settlement proposed avoids the litigation of severability claims by allowing Player Settlement Class members a claim for the liquidated unpaid base compensation in contract years two and three, it also subordinates those claims to the claims of general unsecured claims of trade creditors. That means these "out-year" claims would only receive a distribution if a surplus estate occurs.

74.     Eliminating this litigation will facilitate the Trustee's ability to consider and if warranted pursue claims that could enlarge the estate to the benefit of all creditors.

75.     As part of the settlement, the Trustee will receive an assignment of certain claims the Plaintiffs have asserted that the Trustee believes have been more properly revealed as estate

---

[28] This Application does not address the difficulty in collecting a judgment factor because the Trustee is aligned effectively as a defendant. It is safe to say that if the Claimants and a putative class recovered a judgment just for the priority wage amounts sought, that judgment would be difficult to collect in full because it approximates current estate funds, which would be depleted further by the expense of litigation.

[29] Bankruptcy Rule 3002(c)(4) provides that claims arising from executory contract rejection must be filed "within such time as the court may direct." The Bankruptcy Rules therefore support allowance of the Putative Class Claim for settlement purposes in a manner that embeds a claim process that utilizes familiar bankruptcy forms and adds in the additional due process protection of class settlement procedure.

claims.

76.     The settlement provides a procedure for giving notice to and receiving information from Player Settlement Class members that uses and is consistent with familiar bankruptcy processes.

77.     The Trustee will avoid continued substantial expense of litigating claims that serve only to drain estate funds. This includes the continuing expense of litigating the class certification issues.

78.     It is the sound business judgment of the Chapter 7 Trustee, after thorough consideration of the aforementioned factors that the proposed settlement is in the best interest of the Chapter 7 Estate. The Trustee submits that the terms of the proposed settlement within the reasonable range of litigation possibilities as set forth in *TMT Trailer Ferry, Inc.*, supra.

**D.**     **Certifying the Player Settlement Class is Appropriate.**

79.     The Trustee continues to believe and assert that a litigation class based on the claims and theories the Claimants/Adversary Plaintiffs assert would be unmanageable and improper.

80.     However, certifying a settlement class is a different proposition. Predominance, superiority, and manageability through trial play a much more muted role in the settlement class context because the very proposition of settlement is that there will not be a trial. Circumstances affecting these factors, therefore, do not impose the same difficulties as would occur in litigating a case to judgment. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 2248, 138 L. Ed. 2d 689 (1997).

81.     The Player Settlement Class proposed in this Application focuses on the Standard Player Agreement, and the consideration paid is to recognize claims for amounts cognizable as

contract damages for unpaid base compensation in the order of priority the Bankruptcy Code establishes.[30] The claims allowed in this sense under the settlement are liquidated. The Claimants shall be deemed to have assigned all of their other claims against the Debtors' estate, the Debtors, and Ebersol to the Debtors' estate so that the Trustee may determine how to resolve them. By addressing the settlement to a particular category of easily determinable contract damages and effectively disposing all other claims and theories against the Debtors' estate, the settlement causes common questions to predominate.

82.     Administering the settlement by allowing the Putative Class Claim with a process that embeds familiar bankruptcy forms and timelines approximates the court setting a specific bar date for rejection damages claims, something Bankruptcy Rule 3002(c)(4) specifically authorizes. Manageability will not be made difficult to any extent greater than in any other bankruptcy case. Moreover, because the Trustee has over the past two years spent significant time locating current information for former players to facilitate distribution of tax information, individual notice to all former players will be facilitated.

83.     The Player Settlement Class must still satisfy Rule 23(a)'s requirements of numerosity, typicality, commonality and adequacy. Here, the former players are identifiable and have been identified to include more than 400 specific individuals. By addressing the settlement to contractual matters on which discovery revealed there is an appropriate level of uniformity of interest and facts, the Player Settlement Class proposed meets the commonality and typicality requisites.

84.     Neither the Trustee nor anyone else has suggested that Claimants and their counsel are inadequate representatives. The focus of the settlement on the contractual claims effectively

---

[30] The settlement does subordinate excess contract damages for years two and three to other creditors who filed proofs of claim.

addresses and eliminates any unidentified potential conflicts of interest. And the opt-out right provided under Rule 23(b)(3) affords further protection for any putative class member who does not wish to participate.

**RELIEF REQUESTED**

In accordance with this Application, the Trustee seeks entry of an order authorizing the Trustee to enter into the settlement agreement and for such other and further relief to which the parties show themselves justly entitled.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

By: */s/ Brian S. Engel*
    Steve Turner
    Texas Bar No. 20314700
    Brian S. Engel
    Texas Bar No. 00789279
    3809 Juniper Trace, Suite 205
    Austin, Texas 78738
    Phone:  (512) 687-2500
    Fax:  (512) 477-1112
    SteveT@bdfgroup.com
    Brianen@bdfgroup.com

GENERAL COUNSEL FOR RANDOLPH N. OSHEROW, CHAPTER 7 TRUSTEE

## <u>CERTIFICATE OF SERVICE</u>

By my signature below, I hereby certify that on the 24th day of August, 2021, a true and correct copy of the foregoing document was served via electronic means as listed on the Court's ECF noticing system and by electronic or first class mail to those persons on the attached mailing matrix.

*/s/ Brian S. Engel*
Brian S. Engel

A Bounce Above
13745 Lyall Pl
Lakeside, CA 92040-4823

AAF-ARIZONA HOTSHOTS
Park Place Printing, Inc.
535 W Baseline Rd., Ste 104
Mesa, AZ 85210

AARON C SMITH
LOCKE LORD LLP
111 SOUTH WACKER DRIVE
CHICAGO, IL 60606

Aflanny Inc.
P.O. Box 233
Rancho Santa Fe, CA 92067-0233

AIRZONA BOARD OF REGENTS
ARIZONA STATE UNIV
C/O ROBERT CHARLES  JR.
ONE SOUTH CHURCH AVE SUITE 2000
TUCSON, AZ 85701

ALAN J SNYDER
3315 Falling Creek
San Antonio, TX 78259

Ali, Salene
110 Sunnyland Dr
San Antonio, TX 78228-2915

ALLEN J WESTGATE
5465 ALANDALE COURT
ORLANDO, FL 32839

ALPHA ENTERTAINMENT, LLC
c/oARTOUSH VARSHOSAZ
K&L GATES, LLP
1717 MAIN STREET, #2800
DALLAS, TX 75201

ANGELA CATES
27022 Foggy Meadows Street
San Antonio, TX 78260

Annotti, Mark
2170 FAIRMONT CIRCLE
ORLANDO, FL 32837-6789

ANTHONY HURST
4716 Valdina Way
San Diego, CA 92124-2433

APRIL SCHULZE
10627 Larch Grove St.
Helotes, TX78023

Aramark Sports and Entertainment Srvcs L
c/o Duane Morris LLP Jarret P Hitchings
222 DELAWARE AVE Ste 1600
WILMINGTON, DE 19801
Philadelphia, PA 19103-3041

Arizona Department of Revenue
2005 N Central Ave, Suite 100
Phoenix, AZ 85004-1546

ASIF KHAN
3846 38TH STREET #3
SAN DIEGO, CA 92105

ATLANTA JOURNAL CONSTITUTION
c/o Szabo Assoc. Inc.
3355 Lenos Rd NE Suite 945
Atlanta, GA 30326

AY Productions LLC
1334 Park View Avenue #250
Manhattan Beach, CA 90266-3751

B/C OF CA dba ANTHEM BLUE
ERIC S GOLDSTEIN, ES SHIPMAN &
GOODWIN, LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103-1919

BARB CRISPENS
VP OF FINANCE
KRANOS CORP DBA SCHUTT SPORTS
710 SOUTH INDUSTRIAL DR.
LITCHFIELD, IL 62056

Beddingfield, Blake
828 Woodburn Dr.,
Brentwood, TN 37027-8748

Big Fogg, Inc.
42095 Zero Dr. Unit A2
Temecula, CA 92590-3747

Big Ticket Inc. (Rich Waltz)
820 5th Ave. NW
Issaquah, WA 98027-2816

bluemedia
Gallaghers & Kennedy
Joe Cotterman
2575 E Camelback Rd Suite 1100
Phoeniz, AZ 85016

BPM Concerts, LLC dba Ballpark Music
1045 Crossvine Rd.
Roswell, GA 30075-3886

Broadway Media, LLC dba KXRK, KEGA,
KYMV.
KUUU, KUDD, KALL, KOVO
50 West Broadway #200
Salt Lake City, UT 84101-2024

Buck's Bags Inc.
2401 West Main St.
Boise, ID 83702-4845

BYRON JONES
113 MOSELEY AVE
EATONVILLE, FL 32751

CaliVenture Party Rentals
5562 Las Alturas Terrace
San Diego, CA 92114-5316

Callaway, Rob
12644 Brite Ranch
San Antonio, TX 78245-3218

Campbell Clinic Orthopedics
1400 South Germantown Road
Germantown, TN 38138-2205

Carroll, William
1285 Burgundy Court
Oviedo, FL 32766-6686

CBT CREATIVE BROADCASTIN
TECHNIQUES
15 Charles Place
Closter, NJ 07624

CENTURY LINK COMMUNICATIONS,
LLC
1025 El Dorado Blvd., Bankruptcy Legal
Broomfield, CO 80021

CHRIS MUFFOLETO
2781 Wassum Trail
Chuluota, FL 32766

Classic Traditions, Inc.
4 Baltusrol Ct.
Shoal Creek, AL 35242-5903

Cliff Kleen Athletic
4480 Varsity Dr
Ann Arbor, MI 48108-5007

CLYDE SNOW & SESSIONS PC
201 SOUTH MAIN STREET SUITE 1300
SALT LAKE CITY, UT 84111

CMAXIII Entertainment/ Charles Sloan Jr.
24245 Wilderness Oak Apt #3310
San Antonio, TX 78258-7861

Colsell, Rick
3128 Guilitoy Ave
San Diego, CA 92117-2540

COMMONWEALTH OF PA
Attn: Deb Secrest/Labor/Ind Dept
Collections Support Unit
651 Boas Street, Rm 925
Harrisburg, PA 17121

Contemporary Services Corporation - CSC
17101 Superior St.
Northridge, CA 91325-1961

Coronado, Roberto
8034 Myrtle Glade
Converse, TX 78109-3275

Cortez Liquid Waste Services
19540 S US Highway 281
San Antonio TX 78221-9729

Cottrell, Theodore
4580 Regency Trace,
Atlanta, GA 30331-6832

Cox Media LLC San diego dba Cox Media - West
P.O Box 50456
Los Angeles, CA 90074-0456

COX MEDIA SAN DIEGO
c/o Szabo Associates, Inc.
3355 Lenox Rd NE Suite 945
Atlanta, GA 30326

Cynthia Frelund c/o Aaron C Smith
& Stephen J Humeniuk Locke Lord LLP
111 S Wacker Dr
Chicago, IL 60606

DANIEL K WARD
8431 Cheyenne Pass
San Antonio, TX 78254

DANNY RHINEHART
11476 Willow
Windermere, FL 34786

Datatix Systems dba Smith'sTix
335 West Bugatti Drive
Salt Lake City, UT 84115-2521

David S Pottruck Revocable Trust
201 Spear St, Ste 1750
San Francisco, CA 94105-1699

Davis, Chrystal
1017 Margot Ln
Lake Wales, FL 33853-2732

Decker, Shawn
17525 Silver Creek Ct
Clermont, FL 34714-5825

DENISE DELOACH
13214 Vista del Mundo
San Antonio, TX 78216

DONNA WINFREY
2980 Cordie Lee Lane
Germantown, TN 38138-8184

Down In Front Productions, LLC
1318 Alford Ave, Suite 201
Hoover, AL 35226-3161

Downey, Carolyn
7450 Olivetas Avenue
Apartment 40
La Jolla, CA 92037-4924

Dr. Jill's Foot Pads, Inc.
384 S Military Trail
Deerfield Beach, FL 33442-3007

ED MCCLURE
1610 CR 323
Jourdanton, TX 78026

EDWARD LEPP DBA LEPPSDESIGN, LLC
320 NORTH SHADOWWOOD DRIVE
ST. AUGUSTINE, FL 32086

EM Printing, LLC
3081 Bartlett Corporate Dr.
Bartlett, TN 38133-8943

Embassy Suites by Hilton South Jordan
Salt Lake City
10333 South Jordan Gateway
South Jordan, UT 84095-3954

Embassy Suites San Antonio Riverwalk Downtow
125 East Houston St.
San Antonio, TX 78205-2247

EMERALD AAGAARD VP
CBT CREATIVE BROADCASTING TECHNIQUES
15 CHARLES PLACE
CLOSTER, NJ 07624

EMERALD CHIN VP
CBT CREATIVE BROADCAST TECHNIQUES
15 CHARLES PLACE
CLOSTER, NJ 07624

EMILY MORGAN, LLC
705 EAST HOUSTON STREET
SAN ANTONIO, TX 78205

ENTERPRISE NEWS GROUP
825 N 300 WEST
SUITE NE 220
SALT LAKE CITY, UT 84103

ESTEBAN RAMIREZ, IV
3029 MORNING TRL
SAN ANTONIO, TX 78247

Estrada, Letty
535 W Olmos Dr
San Antonio, TX 78212-1862

Evangelist, John
2669 Eltinge Drive
Alpine, CA 91901-2240

F&F Productions
14333 Myerlake Circle
Clearwater, FL 33760-2839

Fidelis Bookkeeping And Payroll Services
812 N Pacific St
Unit C
Oceanside, CA 92054-1967

Fikes, Bruce
113 W Huff Ave
San Antonio, TX 78214-2129

Fisher, Jason Zone
128 South Kikea Drive
Los Angeles, CA 90048-3526

Five Marketing & Management LLC
925 B Street #603
San Diego, CA 92101-4628

Florida Medical Distributors, LLC
123 Barrier Isle Drive
Ormond beach, FL 32176-2243

Flying V Group
2051 Placentia Ave.
Costa Mesa, CA 92627-3405

Foot Management, Inc.
7201 Friendship Rd.
Pittsville, MD 21850-2039

Ford, Steve
3275 Madison Ave
San Diego, CA 92116-4450

FRANCHISE TAX
BOARDBANKRUPTCY SECTION
MS A340
PO BOX 2952
SACRAMENTO, CA 95812-2952

Franklin, Donna
6050 Brunswick Rd.
Lakeland, TN 38002-6945

FRESH CONCEPTS LLC
49 Research Drive
Milford, CT 06460

Gage, Christina
13021 Shenandoah Dr.
Lakeside, CA 92040-3333

GANNETT CO., INC.
C/O KATHLEEN HENNESSEY
GANNETT CO., INC.
LAW DEPT, 7950 JONES BRANCH DR.
MCLEAN, VA 22107

GARY HORTENSTINE
1353 Old Virginia Ct.
Marietta, GA 30067

Gelvin, Eric
4354 E Sandia St.
Phoenix, AZ 85044

Georgia State University Athletics /
Georgia State University Stadium
755 Hank Aaron Dr.
Atlanta, GA 30315-1120

Georgia State University dba GSU Panther Di
55 Gilmer Street Room 318
Atlanta, GA 30303

Glick, Rush
1651 Vann Court
El Cajon, CA 92020-2236

Goddard, John
1833 Wind Willow Road
Belle Isle, FL 32809-6859

Green, Nicholas
18626 Creekside Pass
San Antonio, TX 78259-3306

GREY SEAL PUPPETS
PO BOX 12
MCCLELLANVILLE, SC 29458

Hamilton, Michael
2349 N. Atwood Circle
Mesa, AZ 85207-2490

Hands on Atlanta
C/O KILPATRICK TOWNSEND &
STOCKTON LLP
1100 PEACHTREE ST NE STE 2800
ATLANTA, GA 30309

HEATHER J PANKO
STUTZMAN BROMBERT ESSERMAN &
PLIFKA
2323 BRYAN ST SUITE 2200
DALLAS, TX 75201

Hernandez, Jose
1681 san altos
Lemon Grove, CA 91945-3929

High Rise Audio
6783 S 2300 E
Salt Lake City, UT 84121-3121

Hog Wild c/o R SHERWOOD
EVANS PETREE PC
1291 TULLY ST
1715 AARON BRENNER DR #800
MEMPHIS, TN 38107

Holiday Inn Riverwalk
217 N. St. Marys Street
San Antonio, TX 78205-2303

Hyatt Regency Riverwalk San Antonio
123 Losoya
San Antonio, TX 78205-2688

ICM Partners - Terrell Davis
10250 Constellation Blvd. 31st floor
Los Angeles, CA 90067-6231

iHeartMedia Ent. Inc.
c/oHerzlich & Blum, LLP
15760 Ventura Boulevard
Suite 700
Encino, CA 91436

JACK DONALD SIDES II
5621 BUTTERCUP LANE
MCKINNEY, TX 75070

JACK KNIGHT ELECTRICAL
11625 RAINBOW RIDGE
HELOTES, TX 78023

JAMES PATRICK GLEASON
1237 Union Club Drive
Winter Garden, FL 34787

JAMICHAEL GEORGE WINSTON
1601 PRINCESS HELEN RD W
MOBILE, AL 36618

Jeff Knight Electrical
11625 Rainbow Ridge
Helotes, TX 78023-4406

JENNIFER L WHITMORE
6022 Spring Time
San Antonio, TX 78249

JENNIFER MONN
3597 Gatlin Place Circle
Orlando, FL 32812

Joe Bosack
1661 Oak Road
Pottsville, PA 17901-3209

JOHN R RICHARDSON
13100 Hissen Ridge Ln
Clermonth, Fl 34715

JOHN ROUNDTREE
9188 Mudville Rd.
Millington, TN 38053

JONATHAN HODGINS
1334 Baur Boulevard
St. Louis, MO 63132

JONATHAN HOWELL
(PAVILION MANAGEMENT CO.)
GLAST PHILLIPS & MURRAY, PC
14801 QUORUM DRIVE, STE 500
DALLAS, TX 75254

Juleyna, LLC dba Exhibit Experts
4012 East Broadway
Suite 307
Phoenix, AZ 85040-8800

KATHRYN HETZLER
PRESIDENT/CEO
GREENSCAPE
7902 US HIGHWAY 70
BARTLETT, TN 38133

KCYY/KISS/KTKX RADIO
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KENS TELEVISION
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KFMB TELEVISION
C/O ZSABO ASSOC INC.
3355 LENOX RD NE, SUITE 945
ATLANTA, GA 30326

Knuckey, Thomas
310 W Hornbeam Dr
longwood, FL 32779-2533

Kohlhausen, Susan
5918 Tivoli Gardens Blvd
Orlando, FL 32829-7704

KPNX TELEVISION
C/O SZABO ASSOC INC.
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KRLV/KOMP/KBAD RADIO
C/O SZABO ASSOC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

Ladds
6881 Appling Farms Parkway
Memphis, TN 38133-4713

Lamar Advertising
1600 Century Ctr Pkwy #104
Memhis, TN 38134-6100

LAMAR
P.O Box 96030
Baton Rouge, LA 70896-9030

LANCE P REED
PRESIDENT
DOCUMENT STRATEGIES, INC.
1235 OLD ALPHARETTA RD SUITE 110
ALPHARETTA, GA 30005

LATHROP GAGE
RAYMOND URBANIK
2101 CEDAR SPRINGS RD
SUITE 1400
DALLAS, TX 75201

LATHROP GAGE
WENDI ALPER PRESSMAN
7701 FORSYTH BLVD SUITE 500
ST LOUIS, MO 63105

Law Enforcement Specialists Inc
PO Box 11656
Glendale, AZ 85318-1656

LAWRENCE D PARK
109 OAKWOOD DR
CUMMIMG, GA 30040

Lazser Down LLC
4528 W. 140th Street
Leawood, KS 66224-3591

LEO J HUDSON
7123 QUAIL GARDENS
SAN ANTONIO, TX 78250

LEWIS CONSULTING
11317 VIA PLAYA DE CORTES
SAN DIEGO, CA 92124

Lopez, Jake
8922 Summer Trail
San Antonio, TX 78250-2613

Mabry, Ashaad
21302 Encino Commons #9204
San Antonio, TX 78259

MacDonald, Kelly
1923 San Jose Ave,
San Francisco, CA 94112-2406

Major Promotions
3517 Spring Valley Court
Mountain Brook, AL 35223-1467

MANUEL RAMIREZ
22702 Sabine Summit
San Antonio, TX 78258

Markey, John & Teresa
5508 Redland Dr
San Diego, CA 92115-2215

Marriott Hotel Services Inc DBA Scottsdale
Marriott at McDowell Mountains
John C Josefsberg
12740 Hillcrest Rd #240
Dallas, TX 75230

MARRIOTT INTERNATIONAL INC.
John C. Josefsberg
12740 Hillcrest Rd suite 240
Dallas, TX 75230

Mason, Thomas
7777 Glen American Apt 349,
Dallas, TX 75225-1840

Masque Sound & Recording DBA
Professional
Wireless Systems
21 E Union Ave
East Rutherford, NJ 07073-2127

Matthies, Mason
PO Box 732
Rancho Santa Fe, CA 92067-0732

Maywald, John
39 Walnut Grove Road
Boerne, TX 78006-6222

Mclain, Nick
3753 e fairfield st
mesa, AZ 85205-4969

Media2, Inc. dba m2
1 Bridge St.
Suite 215
Irvington, NY 10533-1629

MELISSA SCOTT
1973
10339 FASANO DRIVE
LAKESIDE, CA 92040

MICHAEL E WALDEN
PRESIDENT
PYRO SHOWS OF TEXAS, INC.
PO BOX 1776
LAFOLLETTE, TN 37766

MICHAEL T CALKINS
5698 BASSETT PL
SANFORD, FL 32771-8501

MIND OVER MEDIA LLC
15212 N 53RD STREET
SCOTTSDALE, AZ 85254

MMS MEDIA LLC
11872 REAGAN STREET
LOS ALAMITOS, CA 90720

Mobile Modular
NIEL BANSRAJ
5700 LAS POSITAS RD.
LIVERMORE, CA 94550

Morris, Colin
152 NE 167 Street
Suite 403
Miami, FL 33162-3400

Moxley, Trae J.
PO Box 1252,
Carbondale, CO 81623-1252

Muirbrook, Richard
2433 Hansen Meadows Drive,
Syracuse, UT 84075-9368

Murray, Aaron
C/O ELEMENT SPORTS
3180 NORTH POINT PKWY SUITE 106
ALPHARETTA, GA 30005

MWW Group LLC
Frank J. Perch, III
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7395

NATHAN SHAPIRO
242 IMPALA TRACE
SAN ANTONIO, TX 78258

Nationwide Referral Company, Inc. dba
Apartm
Relocation Center
11818 Wurzbach Rd.
San Antonio, TX 78230-2710

NBCUNIVERSAL MEDIA LLC
30 Rockefeller Plaza(1221 Campus)
New York, NY 10112

NEP II, Inc dba NEP Supershooters, LP
c/o Paul Mazeski, Esq.
301 Grant Street, 20th Floor
Pittsburgh, PA 15219

nerdmatics
8149 Santa Monica Blvd
#404
West Hollywood, CA 90046-4912

NICOLAS LARIOS
206 Cork Way
Davenport, FL 33897

North Carolina Department of Revenue
BANKRUPTCY UNIT
PO BOX 1168
Raleigh, NC 27602-1168

OFFICE DEPOT
6600 N MILITARY TRAIL, S416N
BOCA RATON, FL 33496

Ollier, Lori
31459 Sonoma Lane
Temecula, CA 92591-2116

Outdoor America Images, Inc. OAI
4545 W Hillsborough Ave
Tampa, FL 33614-5441

PATRICK A. HARRINGTON
PO Box 1019
Vidor, TX 77670-1019

Patrick H Autry (Dundon Capital
Parters & Thomas G Dundon) Branscomb
PC
8023 Vantage Drive, Suite 560
San Antonio, TX 78230

Paul M Halsey dba Admiral Video, LLC
503 E. Erie St.  Suite B
Lancaster, NY 14086-9506

Pavilion Management Company dba Hilton
Phoen
Mesa Hotel
1011 W Holmes Avenue
Mesa, AZ 85210-4923

PCH TRIBUNE LLC DBA NUMBER SIX
LLC
4770 S 5600 W
West Valley City, UT 84118-7400

PCS Production Company, LP
1551 Corporate Drive
Suite 125
Irving, TX 75038-2450

Polian Consulting
C/O  IRVING WALKER
COLE SCHOTZ PC
300 LOMBARD ST #1450
BELTIMORE, MD 21202

PORTER  HEDGES LLP
AARON J POWER
1000 MAIN STREET 36TH FL
HOUSTON, TX 77002

PRISMIC IO, Inc.
185 Alewife Brook Parkway, Suite 210
Cambridge, MA 02138-1104

Prospect Productions LLC dba Barnicle
175 Varick St. 2nd floor
New York, NY 10014-5856

Reed, Michael
16165 Cayenne Ridge Rd
San Diego, CA  92127-3707

RENEE STOUT
2630 Fallbrook Dr.
Oviedo, FL 32765

Residence Inn by Marriott Orlando
Downtown
680 N Orange Ave
Orlando, FL 32801-1374

Rheinbold, Jim
10437 La Morada Dr
San Diego, CA 92124-1011

RHINO ARIZONA, LLC
125 W Julie Dr.
Tempe, AZ 85283

RICHARD HORNER
12423 ORANGEWOOD CIRCLE
TAVARES, FL 32778

ROBERT GLEESON
230 DWYER AVE #903
SAN ANTONIO, TX 78204-1033

ROBERT ZEARFOSS
2548 Rio Cordillera
San Antonio, TX 78006

RON BEVILACQUA
3677 41ST STREET #4
SAN DIEGO, CA 92105

RON MAULDIN
1964
802 LITTLE CREEK CT
CANTON, GA 30114

RON PROCIW
PRESIDENT IMAGE CAM, INC.
7835 E EVANS RD SUITE 500
SCOTTSDALE, AZ 85260

Royal Restrooms Mountain West, LLC
563 N Colorado St
Salt Lake City, UT 84116-2505

RUBEN V LOSOYA
LOSOYA INDUSTRIES, LLC
205 ROSEBUD STREET
BOERNE, TX 78006

RUSSELL W MILLS
BELL NUNNALLY & MARTIN LLP
2323 ROSS AVE SUITE 1900
DALLAS, TX 75201

RUSSELL W. MILLS (DUNDON CAP
PARTNERS & THOMAS G DUNDON)
Bell Nunnally & Martin LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201

Russell, John
3642 Terrace Place
Carlsbad, CA 92010-6593

RUTHER PALMER
1827 Schley Ave.
San Antonio, TX 78210

SAFC Management
One AT&T Parkway
San Antonio, TX 78219

Safety Services, Inc. dba U.S. Safety Servic
5525 Blanco Rd. Suite 124
San Antonio, TX 78216-6678

SAMANTHA EVANS
539 Parkmont Ct
San Antonio, TX 78258

SAN ANTONIO BUSINESS JOURNAL
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

SAN ANTONIO EXPRESS
c/o Zalina Tsarakova
4747 Southwest Freeway
Houston, TX 77027

SCOTT ENOS
14718 EAGLES CROSSING DRIVE
ORLANDO, FL 32837-6923

Security Industry Specialists Inc. - SIS
20 West Galer Street
Seattle, WA 98119

SECURITY INDUSTRY SPECIALISTS,
INC.
C/O WAYNE R TERRY
15910 VENTURA BVLD 12TH FL
ENCINO, CA 91436

Shapins, William
13119 Lakeshore Grove Drive
Winter Garden, FL 34787-5459

Shavers, Brenda S
574 Terry Street Southeast
Atlanta, GA 30312-2838

SHOCK DOCTOR INC.
11488 SLATER AVE
FOUNTAIN VALLEY, CA 92708-5440

Signal Wiz - Technical Services
6822 Fisk Avenue
San Diego, CA 92122-2437

Silverman Group
436 Orange Street
New Haven, CT 06511-6402

Simplified Coach, Inc.
14051 Saratoga-Sunnyvale Rd.
Saratoga, CA 95070-5834

Skousen, Lindsay
459 Virginia Dr
Winter Park, FL 32789-5806

Smith, Charles
4233 Avacado Blvd
La Mesa, CA 91941-7125

Sneaky Big Studios, LLC
15750 N. Northsight Blvd.
Scottsdale, AZ 85260-1936

Sodexo
c/o Thomas Stanton, Ass Gen Counsel
9801 Washingtonian Blvd 12th Fl
Gaithersburg, MD 20878

SPECTRUM REACH/CHARTER
PO BOX 936671
ATLANTA, GA 31193-6671

STACIE JOHNSON
3039 Chavez Ave
Clermont, FL 34715

Stallard, Diane
1503 South Silverstone Court
Orange City, FL 32763-6256

STATE OF ALABAMA
DEPT OF REVENUE
PO BOX 320001
MONTGOMERY, AL 36132-0001

STEPHEN J HUMENIUK
LOCKE LORD LLP
600 CONGRESS AVE SUITE 2200
AUSTIN, TX 78701

STEVE MARIUCCI
c/o Arnie Herz
14 Vanderventer Ave, suite 255
Port Washington, NY 11050

STEVEN SHAFER
1290 Rip-Jay Circle
Canyon Lake, TX 78133

Stieg, Frank
215 Salvador Square
Winter Park, FL 32789-5618

Tarasewich, Thomas
3647 All American Blvd
Orlando, FL 32810-4726

Tastinger, Anthony
14867 Hawksmoor Run Circle
Orlando, FL 32828-7510

TEAMWORKS INNOVATIONS, INC.
122 E Parrish Street
Durham, NC 27701

Temple, Nicholas
6166 TREE FOX PL
Indianapolis, IN 46237

THE MONTAG GROUP, LLC
14 Vanderventer Ave Suite 255
Port Washington, NY 11050

THEODORE J COTTRELL
4580 REGENCY TRACE SW
ATLANTA, GA 30331

THREE SISTERS PARTNERSHIP
c/op Russell Savory
Beard & Savory
119 S main St Suite 500
Memphis, TN 38103

TIFFANY JOLLEY
ACCT EXECUTIVE
ALLIANCE OF AMERICAN FOOTBALL
5450 ROWLEY RD APT 904
SAN ANTONIO, TX 78240

TIMOTHY GRANT
867 S Grant St.
Longwood, FL 32750-5507

TNT Game Truck, LLC
26788 Rhapsody Ct.
Menifee, LA 92584-2714

Tompkins, John
4703 Camberley Ct.
San Diego, CA 92154-8407

TREY BATES
215 N Center
#310
San Antonio, TX 78202

TRI-C Club Supply Inc.
32615 Park Lane St.
Garden City, MI 48135-1528

TRT DEVELOPMENT COMPANY
Omni SA Hotel
c/o Kristen A Miller Reinsch
4001 Maple Ave, Suite 600
Dallas, TX 75219

TRT DEVELOPMENT CO-SAN
ANTONIO
C/O WICK PHILLIPS JASON RUDD
3131 McKINNEY AVE STE 100
DALLAS, TX 75204

UTAH MEDIA GROUP
4770 S 5600 W
WEST VALLEY CITY, UT 84118

Varner, Nicole
221 Crumley Street SW
Atlanta, GA 30312-2609

Vaughn, Nia
405 Pleasant Hill Road 30047-2980

VITAC Corporation
8300 E Maplewood Ave Suite 310
Greenwood Village, CO 80111-4851

Wadley, Jim
786 West Solana Circle
Solana Beach, CA 92075-2358

WALTER JOHN ELLIS DBA SPORTS &
BROA-
CAST SERVICE, 12101 E Mountain View
Rd.
Scottsdale, AZ 85259

War Machine Inc dba TSHIRTGUN.COM
3429-B Rutherford Rd EXT
Taylors, SC 29687-2133

Ward, Thomas
612 Angelica Circle,
Cary, NC 27518-8727

Watson Sr, Kenneth
3503 Tree Crossing Parkway,
Hoover, AL 35244-4095

WAYNE TERRY
HEMAR ROUSSO & HEALD
15910 VENTURA BOULEVARD, 12TH FL
ENCINO, CA 91436

WCF Mutual Insurance
c/o Law Offices of William B King, PC
3511 Broadway
San Antonio, TX 78209

Weber, Jake
1120 Ecology Loop
Eads, TN 38028-3416

WEIL GOTSHAL & MANGES LLP
ALFREDO PEREZ
700 LOUISIANA ST SUITE 1700
HOUSTON, TX 77002

WEIL GOTSHAL & MANGES LLP
YEHUDAH BUCHWEITZ & GARRETT
FAIL
(CBS) 767 FIFTH AVE
NEW YORK, NY 10153

Wellman, Dale
2692 Indigo Drive
El Cajon, CA 92019-3869

WFTV TELEVISIONC/O SZABO
ASSOCIATES INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

WHBQ TELEVISION
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

WHBQ-TV - Cox Media Group NE, Inc.
P.O Box 82393
Chicago, IL 80691-0293

WHBQ-TV - Cox Media Group NE, Inc., Jay
6080 Mt. Moriah Road EXT
Memphis, TN 38115-2645

WILFORD COLEMAN, JR.
2121 PIONEER PASS
SEGUIN, TX 78155

WILLIAM ENGSTRAND
1505 S SILVERSTONE CT.
ORANGE CITY, FL 32763

WILLIAM J NEULS
4910 Hershey Dr
San Antonio, Tx 78220

WILLIAM MICHAEL MURRAY
4019 Conway Place Circle
Orlando, FL 32812

WILLIAM ROBERTS
413 Four Seasons Ave
mascotte, FL 34753

Wilson, Joy
15330 75 Avenue N.
Palm Beach Gardens, FL 33418-1901

Wolff, Steve
2131 Palomar Airport Road Ste. 330
Carlsbad, CA 92011-1466

WRSV RADIO
C/O SZABO ASSOC INC
3355 LENOX RD NE, SUITE 945
ATLANTA, GA 30326