## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IN RE** | § | **CHAPTER 7** |
| | § | |
| **LEGENDARY FIELD EXHIBITIONS, LLC.** | § | **CASE NO. 19-50900-CAG** |
| | § | |
| | § | |
| **AAF PLAYERS, LLC;** | § | **CASE NO. 19-50902-CAG** |
| | § | |
| **AAF PROPERTIES, LLC;** | § | **CASE NO. 19-50903-CAG** |
| | § | |
| **EBERSOL SPORTS MEDIA GROUP, INC.;** | § | **CASE NO. 19-50904-CAG** |
| | § | |
| | § | |
| **LFE 2, LLC;** | § | **CASE NO. 19-50905-CAG** |
| | § | |
| **WE ARE REALTIME, LLC** | § | **CASE NO. 19-50906-CAG** |
| | § | |
| **DEBTORS** | § | |

**(SUBSTANTIVE CONSOLIDATION OF ALL 6 CASES, INTO ONE CASE, LEGENDARY FIELD EXHIBITIONS, LLC, CASE NO. 19-50900-CAG) JOINTLY ADMINISTERED UNDER CASE NO. 19-50900-CAG)**

**TRUSTEE'S REPLY TO THOMAS DUNDON'S AND DUNDON CAPITAL PARTNERS, LLC'S RESPONSE TO TRUSTEE APPLICATION TO COMPROMISE AND SETTLE UNDER FEDEREAL RULE OF BANKRUPTCY PROCEDURE 9019.**

**TO THE HONORABLE H. CRAIG A. GARGOTTA, U. S. BANKRUPTCY JUDGE:**

Randolph N. Osherow, Trustee, the duly appointed chapter 7 trustee in the above-referenced substantively consolidated cases ("Trustee") files this Reply to Thomas G. Dundon's and Dundon Capital Partners, LLC's[1] Objection to Trustee's Application to Compromise and Settle Pursuant to Federal Rule of Bankruptcy Procedure (this "Reply") and respectfully shows:

---

[1] Thomas G. Dundon and DCP Capital Partners, LLC are respectively called in this Reply as "Dundon" and "DCP" and together collectively called "Objectors."

# I.
## INTRODUCTION

1.      Without even referring to the terms of the relevant employment agreements, Dundon and DCP urge the Court to put on the same blindfold and indulge their abstract contention that former AAF players did not "***earn***" all of their year-one fixed gross Base Compensation because the AAF did not play games during the two weeks before AAF filed its petition for bankruptcy relief.  Dundon and DCP contend that, regardless of the agreements, a person can only "earn" compensation through services rendered to be entitled to § 507(a)(4) priority.[2]

2.      Certain of their assumption, Objector's charge that the negotiated settlement between the estate and the claimants is illegal because it manufactures a § 507(a)(4) priority wage claim that does not exist.

3.      But Objectors are wrong.  "Earned" under § 507(a)(4) is not the interchangeable equivalent of "services rendered."  "Earned" as used in § 507(a)(4) is both more flexible and broader than the term services rendered, embracing contractual compensation to which a person becomes duly entitled under prevailing authorities, including the authorities from which Objectors glean general propositions. Although unmentioned in their Response, the relevant employment agreement terms are crucial.[3] That is especially so here where the contractual entitlement to the fixed gross Base Compensation amount owed for 2019 is not conditioned on the holding of any, or any particular number of games; it admits no "length of service" proration scheme, especially

---

[2] Objectors evidently do not dispute any of the facts alleged in the Trustee's 9019 Application (Docket No. 42) as their response does not specifically deny any of those facts. *See* Bankruptcy Local Rule 9014(b)(1). It therefore appears that Objectors do not contest that the Base Compensation to be paid under the Standard Player Agreement is in the nature of salaries or wages, or that only 8 of 10 payments were made under the agreement before the petition date.

[3] The Trustee's counsel originally believed based on anecdotal information that all installments due to be paid in contract year one were in fact paid.  But through discovery and investigation, the trustee's counsel obtained and reviewed information including all of the PEO's player payroll records, which records establish that only 8 of 10 payments were made.

the one Objectors invent despite its rejection by the very cases they cite to support it.

4.      The negotiated settlement does not manufacture a priority claim.  Just the opposite, it recognizes based on information revealed in the course of the case that for unpaid wages or salaries entitled to priority exists.  Contrary to Objectors charges, the negotiated settlement places that claim exactly where Congress placed it in section 507.  Respectfully the Objectors sparsely grounded and mistaken contrary contention should be

## II.
## RELEVANT BACKGROUND

5.      The claimants, and it now appears all other players, signed with the AAF executed and entered into a Standard Player Agreement ("SPA") for a 3-year contract period with a lump sum Base Compensation amount specified for each year.  The 2019 total fixed Base Compensation amount specified is $70,000 to be paid "in ten equal payments during the applicable regular season."[4]

6.      The SPA includes other obligations of the players, including covenants not play in other leagues except the NFL and then with AAF consent,[5] the obligation to allow the AAF to use and profit from player likenesses and embodiments and promotional materials using those likenesses and other obligations appended in the standard terms and conditions.

7.      The SPA does not specify the number of games that AAF would hold or require players to do anything other than be ready to play and play if called upon.  It does not guarantee

---

[4] The timing of these payments was keyed to the period when the AAF was projected to have its maximum earnings and cash flow from broadcast rights, ticket sales, promotional revenues and the like.

[5] For example, Standard Terms and conditions section 2b provides that a player will "not play football or attempt to play any type of football (i.e., indoor or outdoor, regardless of the surface) for any team, league or association of teams other than the team to which Player is allocated by the Alliance, except with the prior written consent of the Alliance, which may be given or withheld in the Alliance's sole and absolute discretion." Together with the SPA and a Standard Commercial License, players signed an Alternative League Release which effectively consented to allowed players to contract with an NFL franchise under certain circumstances.

any player a right to play any or any particular number of plays in a game. Players had no ability to establish the game schedule or determine whether the AAF would hold any particular game.

8. On April 2, 2019, the AAF announced to its players that it was suspending football operations but it did not cease its business or attempt to terminate players at that time.

9. Nor did the AAF attempt to terminate players, who remained bound to the SPA even after the petition date.

10. On April 17, 2019, the AAF filed its petition for voluntary relief and the player contracts became estate property. The trustee did not assume or reject the SPA's and they became rejected by operation of section 365(g).

11. At the time the AAF canceled its scheduled playoff rounds and filed its petition for relief, Dundon was the sole person with authority to direct those actions.

## III.
## ARGUMENT AND AUTHORITIES

**A. Plaintiffs are wrong to equate the term "earned" with "services rendered." The terms are certainly interchangeable equivalents. "Earned is broad and flexible whereas "services rendered" is narrow and restrictive.**

12. Both in their objection and in argument at the September 13, 2021 status conference and hearing, Dundon and DCP assert that compensation cannot be "**earned**" except where there occur actual "services rendered" and conclude that because the league did not hold games during the last two season games, players "rendered" no services and therefore "earned" no wages or salaries entitled § 507(a)(4) priority. Implicit in their argument is that:

- the term "earned" for §507(a)(4) purposes has a fixed and narrow meaning under which rendering services jot-for jot subject to pro ration for each week is essential, and

- the actual employment agreement terms are irrelevant.

13. Both propositions are wrong. Courts expressly considering the issue recognize that

to "earn" within § 507(a)(4)'s meaning is broader and embraces more than the narrow and restrictive term "service rendered" used elsewhere in the Bankruptcy Code.

14.     For example, in *In re Land America Financial Group*, 435 B.R. 343 (Bankr. E.D. Va 2010) the bankruptcy court held that "earned" should be liberally construed based on the facts rather than on narrow restrictive meanings. *Id*. at 350.[6] *In re LandAmerica Financial Group, Inc.* addressed whether contractual severance pay is fully earned at termination and allowed fourth level priority or must be prorated over the entire length of employment such that priority is only accorded the prorated fraction computed to be attributable to the 180 day period preceding the petition date.[7]

15.     In *In re Pittston Stevedoring Corp*., 40 B.R. 424, 427–8 (Bankr.S.D.N.Y.1984), the bankruptcy court had to determine whether contributions to employee benefits plans based on a prior transactions audit were entitled to priority under (now) § 507(a)(5) where the audit and contributions occurred within a 180 days of the petition date, but related older work. *Id*. at 425. Section 507(a)(5) accords level five priority to employee benefit plan contributions arising from services rendered within 180 days of the petition date. *Id*. at 425. Finding such contributions should not receive § 507(a)(5) priority, the court held that "services rendered" in (now) § 507(a)(5) has a distinct and narrow meaning not susceptible to varying construction. In contrast, the court reasoned that "earned" in (now) § 507(a)(4) is broader and "in fact "allows for some variation **according to agreements** between employers and employees."

16.     These cases, and Congress' decision to use different language to achieve a different result in different sections of the same statute strongly support the proposition that the term

---

[6] There, the bankruptcy court observed that contrary to the restrictive term "service rendered" used in Code section 503(b), Congress intended a broad reading of "earned" in section 507(a) and ameliorated the risk of large claims by capping the amount entitled to priority under section 507(a)(4). *Id.*

[7]

"earned" in section 507(a)(4) is intentionally not limited to the situation where an employee performs labor and then receives a payment, as Objectors urge.  *See, e.g.*, *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 544, 132 S. Ct. 2566, 2583, 183 L. Ed. 2d 450 (2012) ("[w]here Congress uses certain language in one part of a statute and different language in another, it is generally presumed that Congress acts intentionally").[8]

**B.  "Earned" in the context of contractual rights to fixed defined payments means to come to become worthy of or entitled to.  The cases Objectors rely on actually reject the "services rendered" definition Objectors urge in analogous contexts.**

17.     The court need look no further than the cases Objectors cite to determine that plaintiffs are wrong in urging that compensation is only "earned" only if services are actually rendered.  For example, Objectors direct the Court to *Matson v. Alarcon*, 651 F.3d 404 (4th Cir. 2011) (for the proposition that "the triggering event permitting an employee to receive wage, salaries and commissions was the employees performance of their work."  [Docket No. 427 at p. 8 of 17].  *Matson* affirmed *In re LandAmerica Financial Court*, discussed above.  In *Matson*, the debtor adopted a length-of-service severance plan that contractually allowed an employee on termination take either a lump sum or monthly installments.  *Id*. at 406-07.

18.     Terminated employees who did not receive their severance payments filed priority proofs of claim to which the debtor objected asserting that because the severance contract amount was based on years of service, amounts payable should be prorated and reclassified as general unsecured claims.[9]  Like the bankruptcy court below, the Fourth Circuit rejecting the proration argument, holding instead that claimants "earned" their lump sum payments upon termination. Id.

---

[8] Congress plainly knew how to adopt a narrow and restrictive terminology in tailoring the Bankruptcy Code's priority framework.  In addition to limiting the priority of benefit plan contributions to those arising from services rendered in section 507(a)(5), Congress similarly narrowed the circumstances in which post-petition wages can be entitled to level three priority under § 503(b)(1).  That section includes among administrative expenses only those wages, salaries and commissions for "services rendered after commencement of the case that are the actual and necessary costs and expenses of preserving the estate.  11 U.S.C. § 503(b)(1)(A).

[9] Debtors agreed that the proofs of claim correctly stated the total amount owed. *Id*. at 407-08.

at 409.

19.      In analyzing the question before it the Fourth Circuit observed that in ordinary parlance, to "earn" generally means to "receive as equitable return for work done or services rendered," or "**to come to be duly worthy of or entitled**."  *Id.* (citing *Webster's Third New International Dictionary* 714 (2002)).  With respect to the computed lump sum amounts, the Circuit Court actually rejected the "services rendered" definition and adopted the "to come to be duly worthy of or entitled" definition in light of the contracts involved.[10]

20.      Particularly relevant here, the Circuit Court reasoned that whereas in a typical wage earning situation, the events permitting employees receive wages and salaries generally lie with the employee's control,"[11] the events that would permit employees to received contractual payments like severance are within the employer's control.[12] *Id.* at 409.

21.      In this bankruptcy, the AAF, and Thomas Dundon in particular after February 2019, solely controlled (i) whether games would be played and how many and (ii) whether the AAF would terminate the players or hold them to their contracts as it did during the period between April 2 and the April 17 petition date.

22.      The two $7,000 installments of the fixed Base Compensation amount that were not paid would under the AAF's preexisting payroll practices have been paid before April 17, although the SPAs themselves do not regulate the timing of payments of their fixed year-one Base Compensation other than to suggest that it will be paid in ten installments during the regular season.  In every important way, the agreements and circumstances in this case are analogous to the considerations which motivated the Circuit Court to adopt the "to become duly worthy of or

---

[10] Objectors' Response overlooks this fact because it does not actually analyze the case.
[11] That is, an employee generally can decide to show to work or not, to labor or not, etc.
[12] That is, it is the employer who controls termination for convenience, or in the context of this case, cancel scheduled events in which employees might otherwise participate.

entitled" definition of earned where fixed or computed contractual payments like severance are concerned triggered by events within the employers control..

23.    *Matson's* clear rejection both of the definition Objectors urge and of proration for fix contractual payments like severance renders curious Objectors' reference to *Matson* to support both the rejected definition and their own invented one-way proration mechanism without even looking at the SPA terms.[13]

24.    Objectors' Response overlooks what can be learned from actually analyzing *Matson*, because the Response does not actually indulge any analysis.  Read carefully, *Matson* actually supports the proposition that payment for wages and salaries or severance that substitutes for wages and salaries based on pre-petition contractual rights are entitled to § 507(a)(4) priority where the claimant comes to becomes worthy of or entitled to them within 180 days of the petition date.

25.    Here, under the SPAs and under their terms, players' payment rights arose and were to end within that 180 day period, and because the contracts were rejected under § 365(g), players necessarily became entitled to receive them within 180 days of the petition date.  *See In re Ellipsat, Inc.*, 480 B.R. 1, 10, n. 10 (Bankr. D.D.C. 2012) (bankruptcy filing does not terminate an executory employment agreement and providing that notice terminating effected termination); *Snow Phipps Group, LLC v. Kcake Acquisition, Inc.*, CV 2020-0282-KSJM, 2021 WL 1714202, at *39 (Del. Ch. Apr. 30, 2021) (holding Delaware law requires compliance with notice and cure requirement to effect termination).

---

[13] Objectors' demand that the court adopt a proration mechanism that *Matson* rejected and that finds no basis in the SPA terms is even more difficult to understand considering the fact it operates in one-direction only.  Under the AAF's schedule as contemplated, at least four teams would end up playing games playoff games although the SPAs make no provision for additional compensation.  Instead the SPAs set out a fixed annual amount and align its distribution to AAF's cash flow expectations.

26. Moreover, the SPA standard terms and conditions expressly address how compensation is handled on the SPA's termination subsequent termination after the beginning of the regular season. It provides that if the SPA is terminated after the regular season begins, Based Compensation will be paid up to the time of termination. The SPAs also specifies how any termination must be accomplished by written notice.

27. Despite conducting extensive discovery, document gathering and investigation, the Trustee's counsel did not discovery any instance in which a player included in the settlement class definition received a written notice of termination of his and the AAF contract obligations. Rather it appears (and Objectors have admitted) that the contracts were rejected by operation of 11 U.S.C. § 365(g). Rejection results of an executory employment agreement results in a prepetition breach, which is necessarily within 180 days of the petition date.. *In re Ellipsat, Inc.*, 480 B.R. 1 (Bankr. D.D.C. 2012).[14]

28. Objectors also direct the Court to *In re Idearc Inc.*, 442 B.R. 513, 515 (Bankr. N.D. Tex. 2010). *Idearc* is inapposite. It simply observes in *dicta* that because FLSA overtime claims accrue and can be sued on when the overtime wages become due and go unpaid, no reason existed to find they were not earned for bankruptcy priority purposes until much later when an unsigned and unenforceable collective action settlement agreement was distributed within 180 days of the debtor's bankruptcy petition. *Id.* at 516-21.

29. Finally, Objectors suggest that *In re Myer*, 197 B.R. 875, 876 (Bankr. W.D. Mo. 1996) is somehow informative; it is not and again actually supports the 9019 settlement. There,

---

[14] Like most cases addressing when compensation is earned *Ellipsat* is a severance pay case. Notably, the bankruptcy court observed that the severance at issue was neither the "length of service" or the "in lieu of notice type, but was simply a contractual promise to pay a sum of money on termination. *In re Ellipsat, Inc.*, 480 B.R. 1, 11 (Bankr. D.D.C. 2012). In that sense, the claimant's claim was simply for payment of a recognized substitute for wages remarkably similar to the players' claims here.

an independent contractor obtained prepetition a state court judgment for "lost sales commissions." The judgment creditor filed a priority claim in the debtor's bankruptcy case for the judgment damages.

30.     The bankruptcy court denied priority status under 11 U.S.C. § 507(a) (3)[15] because the claimant failed to "identify specific commissions or dates upon which he performed services generating commissions earned but unpaid by the Debtors." *Id*.  Presented with no evidence that the claimant was the producing cause of specific commission during the 180 days preceding the petition date or that the claimant met any of the other special requirements for independent contractor commissions, the bankruptcy court regarded the judgment as one for lost opportunities as oppose to actual commissions lost.

31.     The claimant did contend, but produced no evidence, that the judgment related to commissions actually earned.  *Id*. at 876.  The bankruptcy court appears to presume that because the claimant referred to his claims repeatedly as for "lost commissions" that he must have meant lost opportunities and not commissions earned by unpaid. Although Objectors Response overlooks the point in portraying *Meyer* as persuasive law, the case did not turn on *when* commissions are earned, focusing instead on whether they were commissions compensable under 507(a)(4)(A and B) at all absent evidence. *Id*. at 876-88.

32.     The bankruptcy court further reasoned, that even if assumed to be earned commissions with § 507, the policy underlying § 507(a)(4) did not warrant according judgment priority status because priorities are "intended for the benefit of those who are dependent upon their wages, and who, having lost their employment by the bankruptcy, would be in need of such protection."  *Id*. at 877.  According the bankruptcy court, "by choosing to reduce his claim to a

---

[15] 11 U.S.C. § 507(a)(3) is the predecessor to current § 507(a)(4) renumbered in BAPCPA.

judgment, [the claimant] changed the nature of his claim in bankruptcy," obtaining additional state law remedies and protections not available to mere § 507 claimants, who can obtain no judgment liens or benefit from collateral estoppel. *Id.*

33.     *Meyer* ultimately turns on absence of evidence and a public policy argument and does not at all address **when** wages and salaries are earned. It involves commissions and the special rules in § 507(a)(3)(B) that apply to them. It does inform on two relevant topics, however.

34.     First it reinforces the correctly that evidence matters in determining how § 507(a)(4) applies in particular circumstances. Although ultimately a legal conclusion, much like proving title to realty, facts are important. The point is mundanely obvious, especially in the Rule 9019 context where the Court is required to hold a hearing and the Objectors have transformed the matter into a contested case by their objection. Bankr. R. 9019(a) (stating that a court may determine whether to approve a compromise only "after notice and a hearing").

## C. Objectors are wrong in arguing that the AAF compensated the claimants for all work performed.

35.     In section 2 of their Response, the objectors reurge and incorrectly suggest that the Trustee has adopted their contractually unsupported "proration" position in suggesting that the correctly argued that no wages no priority wage claim existed for year-one compensation under the contract (the only contract year for which a priority wage claim could lie). [Docket No. 427 at p. 8-9 of 17). The Objectors string together excerpts from complaints and various motions, add their intervening interpretive commentary, mix it with their proration theory posit that the Trustee actually agrees with them.

36.     This argument is spurious. In fact, in preparing the Trustee's Objection to Claim 214-2, the Trustee's counsel believed based on plaintiffs' pleadings that the entire $70,000 year-one Based Compensation amount had been paid, including all installments. However, after

extensive discovery, investigation and document collection, including obtaining and analyzing relevant payroll records from AAF's Professional Employment Organization, Paycor, it became clear, as the application to compromise and settle adverts, that only $56,000 of the total Base Compensation was paid, representing 8 of 10 installments.

37.     Although the Objectors' misapprehension of the facts is honest enough, it underscores the reason why the Court must hold a hearing on the 9019 motion and must receive relevant evidence.

38.     The Objectors urge that payment of 8 of 10 installments constituted complete compliance with the year-one payment obligations.  But the Trustee has never adopted the game for game proration argument the Objectors urge.  There is no support for it in the SPA; the Objectors certainly do not point to any contractual support for the position.

39.     Moreover, the there is simply not any credible argument that requires the Court to accept the proposition that  claimants did not perform or have the opportunity to perform work called for the by the SPA.  As mentioned above, the fixed Base Compensation amount is not keyed to any particular number of games played, a matter over which the AAF and Dundon had absolute control.  No one disputes that the claimants provided all the labor the AAF asked and enabled them to provide, including designated team activities associated with 8 games and a preseason.  To say that they claimants never had or had the opportunity to perform services, as Objectors do completely ignores the reality the facts present.

**D.  Objectors mistake in urging that the negotiated settlement will prejudice general unsecured creditors.**

40.     Objectors assert in their Response Section 4 Dundon, who claims to be a creditor, will be prejudiced by the negotiated settlement because it manufactures a fourth level priority claim out of whole cloth and unilaterally subordinates Dundon's and DCP's general unsecured

claims to the players. [Docket No. 427 at p. 11].

41.     But that is not the objective of the negotiated settlement. It does not manufacture a priority claim out of thin air. Instead, as explained throughout the above discussions, it is the Trustee's belief based on the totality of discovery and investigation that the unpaid wages represented by the shortfall in payment of the year-one fixed base compensation in fact represents wages or salaries earned within 180 of the petition date and must be recognized as a fourth level priority claim under § 507(a)(4). The negotiated settlement in this context does nothing more than assign the claim the priority given by Congress through the Bankruptcy Code.

42.     Although it is surely true that equality of distribution to creditors of the same class is a basic precept in bankruptcy, it is equally true that where Congress establishes a priority class in the Code, Courts must honor that classification also. *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004) (holding that where Congress chose to elevate wage claims in priority above other claims, there is no risk of upsetting the priorities and discriminating against general unsecured claims and upholding ability of chapter 11 debtor to pay wage claims before confirmation).

43.     Although the Objectors contend that the Trustee has "a strong probability of ultimate success on claims related to payments under the SPAs," these arguments are not certain and it is not proper for Dundon to suggest that his business judgment supplant the Trustees judgments about that uncertainty and probability of success in the litigation and its duration and expense and the impact on the estate. It is well established the Court generally should afford deference to the business judgment of the Trustee unless a creditor can allege the Trustee has not made a considered judgment. *In re Adilace Holdings, Inc*., 548 B.R. 458, 462 (Bankr. W.D. Tex. 2016).

**E.  Objectors argument that the Trustee should not be permitted to join in a resolution that removes Ebersol from the litigation makes no sense.**

44.     Finally, the Objectors argue Ebersol should not be included in the settlement, again calling into question the Trustee's business judgment. Leaving aside that Ebersol is sued individually, but was also an officer of the AAF, thereby creating the possibility that the Estate would be liable for any allegedly wrongful conduct of his in any case (in the event the corporate veil was not pierced), Ebersol is not *released* by the proposed settlement agreement.

45.     The Plaintiffs' claims against him will be assigned to the Debtors' estate, as will claims against the Debtors' estate itself, along with the right to recover for certain damages against Dundon. These assignments provide additional compensation to the Debtors' estate, beyond the mere termination of the Debtors' dispute with Plaintiffs, which Objectors ignore in their analysis. Moreover, the Trustee has no claims asserted against Ebersol in the adversary and Plaintiffs decision to terminate litigation with him is theirs.  It may be that the Trustee will ultimately bring claims against Dundon and object to his proof of claim; likewise, Ebersol was in the room, is knowledgeable about the AAF's demise and may be a witness.  But those possibilities, even if likely do not inform on the overall reasonableness of a settlement that terminates litigation seeking an approximately $700 million judgment against the estate and the debtors.

### RELIEF REQUESTED

For the foregoing reasons, the Trustee respectfully asks the Court after a hearing and presentation of evidence to approve the Trustee's 9019 application and grant the Trustee such other relief to which the Trustee is justly entitled.

Respectfully submitted,

BARRETT DAFFIN FRAPPIER
TURNER & ENGEL, LLP

By: */s/ Brian S. Engel*            
    Steve Turner
    Texas Bar No. 20314700
    Brian S. Engel
    Texas Bar No. 00789279
    3809 Juniper Trace, Suite 205
    Austin, Texas 78738
    Phone:  (512) 687-2500
    Fax:  (512) 477-1112
    SteveT@bdfgroup.com
    Brianen@bdfgroup.com

GENERAL COUNSEL FOR RANDOLPH N. OSHEROW, CHAPTER 7 TRUSTEE

## **CERTIFICATE OF SERVICE**

By my signature below, I hereby certify that on the 15th day of September, 2021, a true and correct copy of the foregoing document was served via electronic means as listed on the Court's ECF noticing system and by electronic or first class mail to those persons on the attached mailing matrix.

*/s/ Brian S. Engel*
Brian S. Engel

A Bounce Above
13745 Lyall Pl
Lakeside, CA 92040-4823

AAF-ARIZONA HOTSHOTS
Park Place Printing, Inc.
535 W Baseline Rd., Ste 104
Mesa, AZ 85210

AARON C SMITH
LOCKE LORD LLP
111 SOUTH WACKER DRIVE
CHICAGO, IL 60606

Aflanny Inc.
P.O. Box 233
Rancho Santa Fe, CA 92067-0233

AIRZONA BOARD OF REGENTS
ARIZONA STATE UNIV
C/O ROBERT CHARLES  JR.
ONE SOUTH CHURCH AVE SUITE 2000
TUCSON, AZ 85701

ALAN J SNYDER
3315 Falling Creek
San Antonio, TX 78259

Ali, Salene
110 Sunnyland Dr
San Antonio, TX 78228-2915

ALLEN J WESTGATE
5465 ALANDALE COURT
ORLANDO, FL 32839

ALPHA ENTERTAINMENT, LLC
c/oARTOUSH VARSHOSAZ
K&L GATES, LLP
1717 MAIN STREET, #2800
DALLAS, TX 75201

ANGELA CATES
27022 Foggy Meadows Street
San Antonio, TX 78260

Annotti, Mark
2170 FAIRMONT CIRCLE
ORLANDO, FL 32837-6789

ANTHONY HURST
4716 Valdina Way
San Diego, CA 92124-2433

APRIL SCHULZE
10627 Larch Grove St.
Helotes, TX78023

Aramark Sports and Entertainment Srvcs L
c/o Duane Morris LLP Jarret P Hitchings
222 DELAWARE AVE Ste 1600
WILMINGTON, DE 19801
Philadelphia, PA 19103-3041

Arizona Department of Revenue
2005 N Central Ave, Suite 100
Phoenix, AZ 85004-1546

ASIF KHAN
3846 38TH STREET #3
SAN DIEGO, CA 92105

ATLANTA JOURNAL CONSTITUTION
c/o Szabo Assoc. Inc.
3355 Lenos Rd NE Suite 945
Atlanta, GA 30326

AY Productions LLC
1334 Park View Avenue #250
Manhattan Beach, CA 90266-3751

B/C OF CA dba ANTHEM BLUE
ERIC S GOLDSTEIN, ES SHIPMAN &
GOODWIN, LLP
ONE CONSTITUTION PLAZA
HARTFORD, CT 06103-1919

BARB CRISPENS
VP OF FINANCE
KRANOS CORP DBA SCHUTT SPORTS
710 SOUTH INDUSTRIAL DR.
LITCHFIELD, IL 62056

Beddingfield, Blake
828 Woodburn Dr.,
Brentwood, TN 37027-8748

Big Fogg, Inc.
42095 Zero Dr. Unit A2
Temecula, CA 92590-3747

Big Ticket Inc. (Rich Waltz)
820 5th Ave. NW
Issaquah, WA 98027-2816

bluemedia
Gallaghers & Kennedy
Joe Cotterman
2575 E Camelback Rd Suite 1100
Phoeniz, AZ 85016

BPM Concerts, LLC dba Ballpark Music
1045 Crossvine Rd.
Roswell, GA 30075-3886

Broadway Media, LLC dba KXRK, KEGA,
KYMV.
KUUU, KUDD, KALL, KOVO
50 West Broadway #200
Salt Lake City, UT 84101-2024

Buck's Bags Inc.
2401 West Main St.
Boise, ID 83702-4845

BYRON JONES
113 MOSELEY AVE
EATONVILLE, FL 32751

CaliVenture Party Rentals
5562 Las Alturas Terrace
San Diego, CA 92114-5316

Callaway, Rob
12644 Brite Ranch
San Antonio, TX 78245-3218

Campbell Clinic Orthopedics
1400 South Germantown Road
Germantown, TN 38138-2205

Carroll, William
1285 Burgundy Court
Oviedo, FL 32766-6686

CBT CREATIVE BROADCASTIN
TECHNIQUES
15 Charles Place
Closter, NJ 07624

CENTURY LINK COMMUNICATIONS,
LLC
1025 El Dorado Blvd., Bankruptcy Legal
Broomfield, CO 80021

CHRIS MUFFOLETO
2781 Wassum Trail
Chuluota, FL 32766

Classic Traditions, Inc.
4 Baltusrol Ct.
Shoal Creek, AL 35242-5903

Cliff Kleen Athletic
4480 Varsity Dr
Ann Arbor, MI 48108-5007

CLYDE SNOW & SESSIONS PC
201 SOUTH MAIN STREET SUITE 1300
SALT LAKE CITY, UT 84111

CMAXIII Entertainment/ Charles Sloan Jr.
24245 Wilderness Oak Apt #3310
San Antonio, TX 78258-7861

Colsell, Rick
3128 Guilitoy Ave
San Diego, CA 92117-2540

COMMONWEALTH OF PA
Attn: Deb Secrest/Labor/Ind Dept
Collections Support Unit
651 Boas Street, Rm 925
Harrisburg, PA 17121

Contemporary Services Corporation - CSC
17101 Superior St.
Northridge, CA 91325-1961

Coronado, Roberto
8034 Myrtle Glade
Converse, TX 78109-3275

Cortez Liquid Waste Services
19540 S US Highway 281
San Antonio TX 78221-9729

Cottrell, Theodore
4580 Regency Trace,
Atlanta, GA 30331-6832

Cox Media LLC San diego dba Cox Media - West
P.O Box 50456
Los Angeles, CA 90074-0456

COX MEDIA SAN DIEGO
c/o Szabo Associates, Inc.
3355 Lenox Rd NE Suite 945
Atlanta, GA 30326

Cynthia Frelund c/o Aaron C Smith
& Stephen J Humeniuk Locke Lord LLP
111 S Wacker Dr
Chicago, IL 60606

DANIEL K WARD
8431 Cheyenne Pass
San Antonio, TX 78254

DANNY RHINEHART
11476 Willow
Windermere, FL 34786

Datatix Systems dba Smith'sTix
335 West Bugatti Drive
Salt Lake City, UT 84115-2521

David S Pottruck Revocable Trust
201 Spear St, Ste 1750
San Francisco, CA 94105-1699

Davis, Chrystal
1017 Margot Ln
Lake Wales, FL 33853-2732

Decker, Shawn
17525 Silver Creek Ct
Clermont, FL 34714-5825

DENISE DELOACH
13214 Vista del Mundo
San Antonio, TX 78216

DONNA WINFREY
2980 Cordie Lee Lane
Germantown, TN 38138-8184

Down In Front Productions, LLC
1318 Alford Ave, Suite 201
Hoover, AL 35226-3161

Downey, Carolyn
7450 Olivetas Avenue
Apartment 40
La Jolla, CA 92037-4924

Dr. Jill's Foot Pads, Inc.
384 S Military Trail
Deerfield Beach, FL 33442-3007

ED MCCLURE
1610 CR 323
Jourdanton, TX 78026

EDWARD LEPP DBA LEPPSDESIGN, LLC
320 NORTH SHADOWWOOD DRIVE
ST. AUGUSTINE, FL 32086

EM Printing, LLC
3081 Bartlett Corporate Dr.
Bartlett, TN 38133-8943

Embassy Suites by Hilton South Jordan
Salt Lake City
10333 South Jordan Gateway
South Jordan, UT 84095-3954

Embassy Suites San Antonio Riverwalk Downtow
125 East Houston St.
San Antonio, TX 78205-2247

EMERALD AAGAARD VP
CBT CREATIVE BROADCASTING
TECHNIQUES
15 CHARLES PLACE
CLOSTER, NJ 07624

EMERALD CHIN VP
CBT CREATIVE BROADCAST
TECHNIQUES
15 CHARLES PLACE
CLOSTER, NJ 07624

EMILY MORGAN, LLC
705 EAST HOUSTON STREET
SAN ANTONIO, TX 78205

ENTERPRISE NEWS GROUP
825 N 300 WEST
SUITE NE 220
SALT LAKE CITY, UT 84103

ESTEBAN RAMIREZ, IV
3029 MORNING TRL
SAN ANTONIO, TX 78247

Estrada, Letty
535 W Olmos Dr
San Antonio, TX 78212-1862

Evangelist, John
2669 Eltinge Drive
Alpine, CA 91901-2240

F&F Productions
14333 Myerlake Circle
Clearwater, FL 33760-2839

Fidelis Bookkeeping And Payroll Services
812 N Pacific St
Unit C
Oceanside, CA 92054-1967

Fikes, Bruce
113 W Huff Ave
San Antonio, TX 78214-2129

Fisher, Jason Zone
128 South Kikea Drive
Los Angeles, CA 90048-3526

Five Marketing & Management LLC
925 B Street #603
San Diego, CA 92101-4628

Florida Medical Distributors, LLC
123 Barrier Isle Drive
Ormond beach, FL 32176-2243

Flying V Group
2051 Placentia Ave.
Costa Mesa, CA 92627-3405

Foot Management, Inc.
7201 Friendship Rd.
Pittsville, MD 21850-2039

Ford, Steve
3275 Madison Ave
San Diego, CA 92116-4450

FRANCHISE TAX
BOARDBANKRUPTCY SECTION
MS A340
PO BOX 2952
SACRAMENTO, CA 95812-2952

Franklin, Donna
6050 Brunswick Rd.
Lakeland, TN 38002-6945

FRESH CONCEPTS LLC
49 Research Drive
Milford, CT 06460

Gage, Christina
13021 Shenandoah Dr.
Lakeside, CA 92040-3333

GANNETT CO., INC.
C/O KATHLEEN HENNESSEY
GANNETT CO., INC.
LAW DEPT, 7950 JONES BRANCH DR.
MCLEAN, VA 22107

GARY HORTENSTINE
1353 Old Virginia Ct.
Marietta, GA 30067

Gelvin, Eric
4354 E Sandia St.
Phoenix, AZ 85044

Georgia State University Athletics /
Georgia State University Stadium
755 Hank Aaron Dr.
Atlanta, GA 30315-1120

Georgia State University dba GSU Panther
Di
55 Gilmer Street Room 318
Atlanta, GA 30303

Glick, Rush
1651 Vann Court
El Cajon, CA 92020-2236

Goddard, John
1833 Wind Willow Road
Belle Isle, FL 32809-6859

Green, Nicholas
18626 Creekside Pass
San Antonio, TX 78259-3306

GREY SEAL PUPPETS
PO BOX 12
MCCLELLANVILLE, SC 29458

Hamilton, Michael
2349 N. Atwood Circle
Mesa, AZ 85207-2490

Hands on Atlanta
C/O KILPATRICK TOWNSEND &
STOCKTON LLP
1100 PEACHTREE ST NE STE 2800
ATLANTA, GA 30309

HEATHER J PANKO
STUTZMAN BROMBERT ESSERMAN &
PLIFKA
2323 BRYAN ST SUITE 2200
DALLAS, TX 75201

Hernandez, Jose
1681 san altos
Lemon Grove, CA 91945-3929

High Rise Audio
6783 S 2300 E
Salt Lake City, UT 84121-3121

Hog Wild c/o R SHERWOOD
EVANS PETREE PC
1291 TULLY ST
1715 AARON BRENNER DR #800
MEMPHIS, TN 38107

Holiday Inn Riverwalk
217 N. St. Marys Street
San Antonio, TX 78205-2303

Hyatt Regency Riverwalk San Antonio
123 Losoya
San Antonio, TX 78205-2688

ICM Partners - Terrell Davis
10250 Constellation Blvd. 31st floor
Los Angeles, CA 90067-6231

iHeartMedia Ent. Inc.
c/oHerzlich & Blum, LLP
15760 Ventura Boulevard
Suite 700
Encino, CA 91436

JACK DONALD SIDES II
5621 BUTTERCUP LANE
MCKINNEY, TX 75070

JACK KNIGHT ELECTRICAL
11625 RAINBOW RIDGE
HELOTES, TX 78023

JAMES PATRICK GLEASON
1237 Union Club Drive
Winter Garden, FL 34787

JAMICHAEL GEORGE WINSTON
1601 PRINCESS HELEN RD W
MOBILE, AL 36618

Jeff Knight Electrical
11625 Rainbow Ridge
Helotes, TX 78023-4406

JENNIFER L WHITMORE
6022 Spring Time
San Antonio, TX 78249

JENNIFER MONN
3597 Gatlin Place Circle
Orlando, FL 32812

Joe Bosack
1661 Oak Road
Pottsville, PA 17901-3209

JOHN R RICHARDSON
13100 Hissen Ridge Ln
Clermonth, Fl 34715

JOHN ROUNDTREE
9188 Mudville Rd.
Millington, TN 38053

JONATHAN HODGINS
1334 Baur Boulevard
St. Louis, MO 63132

JONATHAN HOWELL
(PAVILION MANAGEMENT CO.)
GLAST PHILLIPS & MURRAY, PC
14801 QUORUM DRIVE, STE 500
DALLAS, TX 75254

Juleyna, LLC dba Exhibit Experts
4012 East Broadway
Suite 307
Phoenix, AZ 85040-8800

KATHRYN HETZLER
PRESIDENT/CEO
GREENSCAPE
7902 US HIGHWAY 70
BARTLETT, TN 38133

KCYY/KISS/KTKX RADIO
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KENS TELEVISION
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KFMB TELEVISION
C/O ZSABO ASSOC INC.
3355 LENOX RD NE, SUITE 945
ATLANTA, GA 30326

Knuckey, Thomas
310 W Hornbeam Dr
longwood, FL 32779-2533

Kohlhausen, Susan
5918 Tivoli Gardens Blvd
Orlando, FL 32829-7704

KPNX TELEVISION
C/O SZABO ASSOC INC.
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

KRLV/KOMP/KBAD RADIO
C/O SZABO ASSOC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

Ladds
6881 Appling Farms Parkway
Memphis, TN 38133-4713

Lamar Advertising
1600 Century Ctr Pkwy #104
Memhis, TN 38134-6100

LAMAR
P.O Box 96030
Baton Rouge, LA 70896-9030

LANCE P REED
PRESIDENT
DOCUMENT STRATEGIES, INC.
1235 OLD ALPHARETTA RD SUITE 110
ALPHARETTA, GA 30005

LATHROP GAGE
RAYMOND URBANIK
2101 CEDAR SPRINGS RD
SUITE 1400
DALLAS, TX 75201

LATHROP GAGE
WENDI ALPER PRESSMAN
7701 FORSYTH BLVD SUITE 500
ST LOUIS, MO 63105

Law Enforcement Specialists Inc
PO Box 11656
Glendale, AZ 85318-1656

LAWRENCE D PARK
109 OAKWOOD DR
CUMMIMG, GA 30040

Lazser Down LLC
4528 W. 140th Street
Leawood, KS 66224-3591

LEO J HUDSON
7123 QUAIL GARDENS
SAN ANTONIO, TX 78250

LEWIS CONSULTING
11317 VIA PLAYA DE CORTES
SAN DIEGO, CA 92124

Lopez, Jake
8922 Summer Trail
San Antonio, TX 78250-2613

Mabry, Ashaad
21302 Encino Commons #9204
San Antonio, TX 78259

MacDonald, Kelly
1923 San Jose Ave,
San Francisco, CA 94112-2406

Major Promotions
3517 Spring Valley Court
Mountain Brook, AL 35223-1467

MANUEL RAMIREZ
22702 Sabine Summit
San Antonio, TX 78258

Markey, John & Teresa
5508 Redland Dr
San Diego, CA 92115-2215

Marriott Hotel Services Inc DBA Scottsdale
Marriott at McDowell Mountains
John C Josefsberg
12740 Hillcrest Rd #240
Dallas, TX 75230

MARRIOTT INTERNATIONAL INC.
John C. Josefsberg
12740 Hillcrest Rd suite 240
Dallas, TX 75230

Mason, Thomas
7777 Glen American Apt 349,
Dallas, TX 75225-1840

Masque Sound & Recording DBA
Professional
Wireless Systems
21 E Union Ave
East Rutherford, NJ 07073-2127

Matthies, Mason
PO Box 732
Rancho Santa Fe, CA 92067-0732

Maywald, John
39 Walnut Grove Road
Boerne, TX 78006-6222

Mclain, Nick
3753 e fairfield st
mesa, AZ 85205-4969

Media2, Inc. dba m2
1 Bridge St.
Suite 215
Irvington, NY 10533-1629

MELISSA SCOTT
1973
10339 FASANO DRIVE
LAKESIDE, CA 92040

MICHAEL E WALDEN
PRESIDENT
PYRO SHOWS OF TEXAS, INC.
PO BOX 1776
LAFOLLETTE, TN 37766

MICHAEL T CALKINS
5698 BASSETT PL
SANFORD, FL 32771-8501

MIND OVER MEDIA LLC
15212 N 53RD STREET
SCOTTSDALE, AZ 85254

MMS MEDIA LLC
11872 REAGAN STREET
LOS ALAMITOS, CA 90720

Mobile Modular
NIEL BANSRAJ
5700 LAS POSITAS RD.
LIVERMORE, CA 94550

Morris, Colin
152 NE 167 Street
Suite 403
Miami, FL 33162-3400

Moxley, Trae J.
PO Box 1252,
Carbondale, CO 81623-1252

Muirbrook, Richard
2433 Hansen Meadows Drive,
Syracuse, UT 84075-9368

Murray, Aaron
C/O ELEMENT SPORTS
3180 NORTH POINT PKWY SUITE 106
ALPHARETTA, GA 30005

MWW Group LLC
Frank J. Perch, III
1650 Market Street, Suite 1800
Philadelphia, PA 19103-7395

NATHAN SHAPIRO
242 IMPALA TRACE
SAN ANTONIO, TX 78258

Nationwide Referral Company, Inc. dba
Apartm
Relocation Center
11818 Wurzbach Rd.
San Antonio, TX 78230-2710

NBCUNIVERSAL MEDIA LLC
30 Rockefeller Plaza(1221 Campus)
New York, NY 10112

NEP II, Inc dba NEP Supershooters, LP
c/o Paul Mazeski, Esq.
301 Grant Street, 20th Floor
Pittsburgh, PA 15219

nerdmatics
8149 Santa Monica Blvd
#404
West Hollywood, CA 90046-4912

NICOLAS LARIOS
206 Cork Way
Davenport, FL 33897

North Carolina Department of Revenue
BANKRUPTCY UNIT
PO BOX 1168
Raleigh, NC 27602-1168

OFFICE DEPOT
6600 N MILITARY TRAIL, S416N
BOCA RATON, FL 33496

Ollier, Lori
31459 Sonoma Lane
Temecula, CA 92591-2116

Outdoor America Images, Inc. OAI
4545 W Hillsborough Ave
Tampa, FL 33614-5441

PATRICK A. HARRINGTON
PO Box 1019
Vidor, TX 77670-1019

Patrick H Autry (Dundon Capital
Parters & Thomas G Dundon) Branscomb
PC
8023 Vantage Drive, Suite 560
San Antonio, TX 78230

Paul M Halsey dba Admiral Video, LLC
503 E. Erie St. Suite B
Lancaster, NY 14086-9506

Pavilion Management Company dba Hilton
Phoen
Mesa Hotel
1011 W Holmes Avenue
Mesa, AZ 85210-4923

PCH TRIBUNE LLC DBA NUMBER SIX
LLC
4770 S 5600 W
West Valley City, UT 84118-7400

PCS Production Company, LP
1551 Corporate Drive
Suite 125
Irving, TX 75038-2450

Polian Consulting
C/O IRVING WALKER
COLE SCHOTZ PC
300 LOMBARD ST #1450
BELTIMORE, MD 21202

PORTER HEDGES LLP
AARON J POWER
1000 MAIN STREET 36TH FL
HOUSTON, TX 77002

PRISMIC IO, Inc.
185 Alewife Brook Parkway, Suite 210
Cambridge, MA 02138-1104

Prospect Productions LLC dba Barnicle
175 Varick St. 2nd floor
New York, NY 10014-5856

Reed, Michael
16165 Cayenne Ridge Rd
San Diego, CA 92127-3707

RENEE STOUT
2630 Fallbrook Dr.
Oviedo, FL 32765

Residence Inn by Marriott Orlando
Downtown
680 N Orange Ave
Orlando, FL 32801-1374

Rheinbold, Jim
10437 La Morada Dr
San Diego, CA 92124-1011

RHINO ARIZONA, LLC
125 W Julie Dr.
Tempe, AZ 85283

RICHARD HORNER
12423 ORANGEWOOD CIRCLE
TAVARES, FL 32778

ROBERT GLEESON
230 DWYER AVE #903
SAN ANTONIO, TX 78204-1033

ROBERT ZEARFOSS
2548 Rio Cordillera
San Antonio, TX 78006

RON BEVILACQUA
3677 41ST STREET #4
SAN DIEGO, CA 92105

RON MAULDIN
1964
802 LITTLE CREEK CT
CANTON, GA 30114

RON PROCIW
PRESIDENT IMAGE CAM, INC.
7835 E EVANS RD SUITE 500
SCOTTSDALE, AZ 85260

Royal Restrooms Mountain West, LLC
563 N Colorado St
Salt Lake City, UT 84116-2505

RUBEN V LOSOYA
LOSOYA INDUSTRIES, LLC
205 ROSEBUD STREET
BOERNE, TX 78006

RUSSELL W MILLS
BELL NUNNALLY & MARTIN LLP
2323 ROSS AVE SUITE 1900
DALLAS, TX 75201

RUSSELL W. MILLS (DUNDON CAP
PARTNERS & THOMAS G DUNDON)
Bell Nunnally & Martin LLP
2323 Ross Avenue, Suite 1900
Dallas, TX 75201

Russell, John
3642 Terrace Place
Carlsbad, CA 92010-6593

RUTHER PALMER
1827 Schley Ave.
San Antonio, TX 78210

SAFC Management
One AT&T Parkway
San Antonio, TX 78219

Safety Services, Inc. dba U.S. Safety Servic
5525 Blanco Rd. Suite 124
San Antonio, TX 78216-6678

SAMANTHA EVANS
539 Parkmont Ct
San Antonio, TX 78258

SAN ANTONIO BUSINESS JOURNAL
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

SAN ANTONIO EXPRESS
c/o Zalina Tsarakova
4747 Southwest Freeway
Houston, TX 77027

SCOTT ENOS
14718 EAGLES CROSSING DRIVE
ORLANDO, FL 32837-6923

Security Industry Specialists Inc. - SIS
20 West Galer Street
Seattle, WA 98119

SECURITY INDUSTRY SPECIALISTS,
INC.
C/O WAYNE R TERRY
15910 VENTURA BVLD 12TH FL
ENCINO, CA 91436

Shapins, William
13119 Lakeshore Grove Drive
Winter Garden, FL 34787-5459

Shavers, Brenda S
574 Terry Street Southeast
Atlanta, GA 30312-2838

SHOCK DOCTOR INC.
11488 SLATER AVE
FOUNTAIN VALLEY, CA 92708-5440

Signal Wiz - Technical Services
6822 Fisk Avenue
San Diego, CA 92122-2437

Silverman Group
436 Orange Street
New Haven, CT 06511-6402

Simplified Coach, Inc.
14051 Saratoga-Sunnyvale Rd.
Saratoga, CA 95070-5834

Skousen, Lindsay
459 Virginia Dr
Winter Park, FL 32789-5806

Smith, Charles
4233 Avacado Blvd
La Mesa, CA 91941-7125

Sneaky Big Studios, LLC
15750 N. Northsight Blvd.
Scottsdale, AZ 85260-1936

Sodexo
c/o Thomas Stanton, Ass Gen Counsel
9801 Washingtonian Blvd 12th Fl
Gaithersburg, MD 20878

SPECTRUM REACH/CHARTER
PO BOX 936671
ATLANTA, GA 31193-6671

STACIE JOHNSON
3039 Chavez Ave
Clermont, FL 34715

Stallard, Diane
1503 South Silverstone Court
Orange City, FL 32763-6256

STATE OF ALABAMA
DEPT OF REVENUE
PO BOX 320001
MONTGOMERY, AL 36132-0001

STEPHEN J HUMENIUK
LOCKE LORD LLP
600 CONGRESS AVE SUITE 2200
AUSTIN, TX 78701

STEVE MARIUCCI
c/o Arnie Herz
14 Vanderventer Ave, suite 255
Port Washington, NY 11050

STEVEN SHAFER
1290 Rip-Jay Circle
Canyon Lake, TX 78133

Stieg, Frank
215 Salvador Square
Winter Park, FL 32789-5618

Tarasewich, Thomas
3647 All American Blvd
Orlando, FL 32810-4726

Tastinger, Anthony
14867 Hawksmoor Run Circle
Orlando, FL 32828-7510

TEAMWORKS INNOVATIONS, INC.
122 E Parrish Street
Durham, NC 27701

Temple, Nicholas
6166 TREE FOX PL
Indianapolis, IN 46237

THE MONTAG GROUP, LLC
14 Vanderventer Ave Suite 255
Port Washington, NY 11050

THEODORE J COTTRELL
4580 REGENCY TRACE SW
ATLANTA, GA 30331

THREE SISTERS PARTNERSHIP
c/op Russell Savory
Beard & Savory
119 S main St Suite 500
Memphis, TN 38103

TIFFANY JOLLEY
ACCT EXECUTIVE
ALLIANCE OF AMERICAN FOOTBALL
5450 ROWLEY RD APT 904
SAN ANTONIO, TX 78240

TIMOTHY GRANT
867 S Grant St.
Longwood, FL 32750-5507

TNT Game Truck, LLC
26788 Rhapsody Ct.
Menifee, LA 92584-2714

Tompkins, John
4703 Camberley Ct.
San Diego, CA 92154-8407

TREY BATES
215 N Center
#310
San Antonio, TX 78202

TRI-C Club Supply Inc.
32615 Park Lane St.
Garden City, MI 48135-1528

TRT DEVELOPMENT COMPANY
Omni SA Hotel
c/o Kristen A Miller Reinsch
4001 Maple Ave, Suite 600
Dallas, TX 75219

TRT DEVELOPMENT CO-SAN
ANTONIO
C/O WICK PHILLIPS JASON RUDD
3131 McKINNEY AVE STE 100
DALLAS, TX 75204

UTAH MEDIA GROUP
4770 S 5600 W
WEST VALLEY CITY, UT 84118

Varner, Nicole
221 Crumley Street SW
Atlanta, GA 30312-2609

Vaughn, Nia
405 Pleasant Hill Road 30047-2980

VITAC Corporation
8300 E Maplewood Ave Suite 310
Greenwood Village, CO 80111-4851

Wadley, Jim
786 West Solana Circle
Solana Beach, CA 92075-2358

WALTER JOHN ELLIS DBA SPORTS &
BROA-
CAST SERVICE, 12101 E Mountain View
Rd.
Scottsdale, AZ 85259

War Machine Inc dba TSHIRTGUN.COM
3429-B Rutherford Rd EXT
Taylors, SC 29687-2133

Ward, Thomas
612 Angelica Circle,
Cary, NC 27518-8727

Watson Sr, Kenneth
3503 Tree Crossing Parkway,
Hoover, AL 35244-4095

WAYNE TERRY
HEMAR ROUSSO & HEALD
15910 VENTURA BOULEVARD, 12TH FL
ENCINO, CA 91436

WCF Mutual Insurance
c/o Law Offices of William B King, PC
3511 Broadway
San Antonio, TX 78209

Weber, Jake
1120 Ecology Loop
Eads, TN 38028-3416

WEIL GOTSHAL & MANGES LLP
ALFREDO PEREZ
700 LOUISIANA ST SUITE 1700
HOUSTON, TX 77002

WEIL GOTSHAL & MANGES LLP
YEHUDAH BUCHWEITZ & GARRETT
FAIL
(CBS) 767 FIFTH AVE
NEW YORK, NY 10153

Wellman, Dale
2692 Indigo Drive
El Cajon, CA 92019-3869

WFTV TELEVISIONC/O SZABO
ASSOCIATES INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

WHBQ TELEVISION
C/O SZABO ASSOC INC
3355 LENOX RD NE SUITE 945
ATLANTA, GA 30326

WHBQ-TV - Cox Media Group NE, Inc.
P.O Box 82393
Chicago, IL 80691-0293

WHBQ-TV - Cox Media Group NE, Inc., Jay
6080 Mt. Moriah Road EXT
Memphis, TN 38115-2645

WILFORD COLEMAN, JR.
2121 PIONEER PASS
SEGUIN, TX 78155

WILLIAM ENGSTRAND
1505 S SILVERSTONE CT.
ORANGE CITY, FL 32763

WILLIAM J NEULS
4910 Hershey Dr
San Antonio, Tx 78220

WILLIAM MICHAEL MURRAY
4019 Conway Place Circle
Orlando, FL 32812

WILLIAM ROBERTS
413 Four Seasons Ave
mascotte, FL 34753

Wilson, Joy
15330 75 Avenue N.
Palm Beach Gardens, FL 33418-1901

Wolff, Steve
2131 Palomar Airport Road Ste. 330
Carlsbad, CA 92011-1466

WRSV RADIO
C/O SZABO ASSOC INC
3355 LENOX RD NE, SUITE 945
ATLANTA, GA 30326