IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| IN RE | CHAPTER 7 |
| LEGENDARY FIELD EXHIBITIONS, LLC, | CASE NO.: 19-50900-cag |
| AAF PLAYERS, LLC, | CASE NO.: 19-50902-CAG |
| AAF PROPERTIES, LLC, | CASE NO.: 19-50903-CAG |
| EBERSOL SPORTS MEDIA GROUP, INC., | CASE NO.: 19-50904-CAG |
| LFE 2, LLC, | CASE NO.: 19-50905-CAG |
| WE ARE REALTIME, LLC, | CASE NO.; 19-50906-CAG |
| DEBTORS. | |
| | (SUBSTANTIVE CONSOLIDATION OF ALL 6 CASES, INTO ONE CASE LEGENDARY FIELD EXHIBITIONS, LLC, CASE NO. 19-50900-CAG) JOINTLY ADMINISTERED UNDER CASE NO. 19-50900-CAG) |

**THOMAS G. DUNDON'S AND DUNDON CAPITAL PARTNERS, LLC'S SUR-REPLY TO TRUSTEE'S REPLY TO OBJECTIONS TO TRUSTEE'S APPLICATION TO COMPROMISE AND SETTLE PURSUANT <u>TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019</u>**

TO THE HONORABLE CRAIG A. GARGOTTA, UNITED STATES BANKRUPTCY JUDGE

**COME NOW,** Thomas G. Dundon ("Dundon") and Dundon Capital Partners, LLC ("DCP"), creditors and parties in interest herein, who file this their Sur-Reply to the Trustee's Reply to Objections to Trustee's Application to Compromise and Settle Pursuant to Federal Rule of Bankruptcy Procedure 9019 ("Application")(Doc. # 433).

**SUR-REPLY TO TRUSTEE'S REPLY TO OBJECTIONS TO TRUSTEE'S APPLICATION TO COMPROMISE AND SETTLE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019     Page 1**

### I. SUMMARY

In addition to the reasons set forth in their original objections, Dundon and DCP direct the Court to the contracts themselves—which establish Plaintiffs have no claim to any wages the Settling Parties[1] attempt to create by the settlement agreement. In addition, it is important to direct the court to the complete about-face the Trustee takes from the original objection he filed last year. Accordingly, these issues make the Trustee's proposed settlement not "fair, equitable, and in the best interest of the estate," and Dundon and DCP ask the Court to reject the proposed settlement.

### III. ARGUMENT

**A. LEGAL STANDARD**

"[S]ection 507(a)(4) makes clear that any 'wages, salaries, or commissions must have been *earned* within 180 days prior to the petition date ... [and] [c]ourts have uniformly held that wages are 'earned' when the services are provided, and 'no later than the termination of the individual's employment.'" *In re Aquatic Pools, Inc.*, No. 15-11406 T11, 2016 WL 3193648, at *2 (Bankr. D.N.M. May 27, 2016) (citations and quotations omitted) (emphasis in original); *see also, In re High Plains Computing, Inc.*, 596 B.R. 896, 901 (Bankr. D. Colo. 2019) (reasoning wages are earned when workers provide services). Wages are earned "when the right to receive payment occurred." *Aquatic Pools, Inc.*, 2016 WL 3193648m at *2 (citing 4 Collier on Bankruptcy ¶ 507.06[5] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2010)).

**B. THE SPAS DO NOT GUARANTEE WAGES PAST TERMINATION.**

The governing determination of whether the Court can approve the settlement proceeds as priority wages is whether Plaintiffs "earned" the amounts the Settling Parties desire to designate

---

[1] Dundon and DCP refer to Plaintiffs Colton Schmidt, Reggie Northrup, individually, and on behalf of those similarly situated, as "Plaintiffs", and Plaintiffs, the Trustee, and Charles Ebersol collectively, as the "Settling Parties."

**SUR-REPLY TO TRUSTEE'S REPLY TO OBJECTIONS TO TRUSTEE'S APPLICATION TO COMPROMISE AND SETTLE PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9019**   **Page 2**

as priority wages. The actual Standard Player Agreements between AAF and Plaintiffs establish the SPAs are not guaranteed money contracts entitling any of the unpaid portion as "earned," granting priority wage status.[2]

Section 1 of the Standard Terms and Conditions to the Alliance of American Football Standard Player Agreement states:

> 1. <u>Compensation and Player Category.</u> During the Contract Period, the Alliance shall employ Player as a skilled professional football player and the Alliance shall compensate Player as set forth in Sections C and D of the SPA and below. Player acknowledges that the Alliance has no responsibility to render tax advice and assumes no responsibility with respect to Player's tax obligations.
>
> (a) Unless agreed to in writing, if the SPA is executed (or Player is activated) after the beginning of the regular season, Base Compensation payable to Player will be reduced ***proportionately and Player will be paid the portions of his Base Compensation becoming due and payable after he is activated.*** If the SPA is terminated *after* the beginning of the regular season, ***Base Compensation payable to Player will be reduced proportionately and Player will be paid the portions of his Base Compensation having become due and payable up to the time of termination.***

Trustee's Exhibits 1-2 at § 1(a) (emphasis added). The plain language of the SPAs contemplates proportionality and pay for play. *See also,* Trustee's Objection at ¶¶ 144-151.[3]

As further proof these are not guaranteed money contracts, the Court can look at section 8(b), which provides two examples of context-specific grounds for terminating the agreement — morality and skill. We know the drafter did not intend for the default position of the SPAs to be guaranteed pay or "earned" wages for weeks not performed. This is because section 8(b) provides

---

[2] Dundon and DCP reference Exhibits 1-2 from the Trustee's Exhibit and Witness List, which are the standard player agreements entered by Colton Schmidt and Reggie Northrup, lead plaintiffs to the adversary proceeding under which the Settling Parties attempt to compromise under Rule 9019.

[3] Dundon and DCP refer to the Amended Trustee's Objection to Claim No. 214-2 of Colton Schmidt and Reggie Northrup with Notice Thereof and Accompanying Brief, Doc#270 as "Trustee's Objection" herein.

an avenue for holding pay in escrow, effectively creating an exclusive right to compensation for the entire season, and the only such promise of payment for weeks the players did not play. The SPAs afford this escrow withholding (and arguable *de facto* guarantee of pay for games not played) for morality termination, but they do not extend such a guaranty for any other ground for termination. Therefore, if the contract intended only morality to hold in escrow and not for skill, then future guarantee pay is not the default standard for determining what the players "earned," usurping the proportionality language described in section one and entitling them to payment for weeks 9-10.

The maxim *expression unius exclusion alterius*, the naming of one thing excludes another, is instructive here. *See CKB & Assocs., Inc. v. Moore McCormack Petroleum, Inc.*, 734 S.W.2d 653, 655 (Tex. 1987). In *CKB*, the Court reversed a summary judgment based upon the preclusion of certain claims in a settlement agreement. Those parties entered a settlement agreement where the defendant specifically waived causes of action arising from the presentment of two drafts described in an agreement, but the agreement was silent as to a third draft. The Court interpreted the settlement agreement's silence to the third as an inference that the parties did not intend to preclude causes of action related to that third draft. *Id*. at 655-56; *see also, In re Verizon Ins. Coverage Appeals*, 222 A.3d 566, 578 n. 77 (Del. 2019), *reh'g denied* (Nov. 18, 2019) (addressing the application of this principle in Delaware law)).

The same principle applies here. It should be undisputed the SPAs contain proportionality language that limits the compensation from base pay depending on the weeks of work actually performed. *See* Exhs. 1-2 § 1(a). Indeed, the Trustee took this position and briefed the issue in approximately 65 pages. *See* Trustee's Objection. Section 8(b), which provides the exception for receiving payment under circumstances of non-performance, does not include for all contexts—

just morality termination. The defunct entities that drafted the SPAs could have included a guaranty for work not performed for termination reasons other than morality, but they chose not to and should not manufacture one now.

### C. THE TRUSTEE'S INCONSISTENT POSITIONS DO NOT JUSTIFY MANUFACTURING A PRIORITY WAGE CLAIM WHERE NONE EXISTS.

It also is important for the Court to consider the Trustee's inconsistent positions. Previously, the Trustee believed Plaintiffs did not earn compensation. *See, e.g.*, Trustee's Objection at ¶ 144 ("When the league suspended operations, there was no compensation due to either of them that was then earned but unpaid."); *Id.* ¶ 155 ("It is indisputable, and the claim does not allege otherwise, that upon suspension of league operations, all sums then due under the player contracts had been paid."). Now, the Trustee takes the opposite position.

The Trustee also argues the same authorities mean different things. When the Trustee objected to the class claim, he previously argued Plaintiffs' claim is not entitled to priority treatment because it is "forward-looking" and Plaintiffs are entitled to only amounts earned prior to bankruptcy. Trustee's Objection at ¶ 153. The Trustee cited *Matson v. Alarcon*, 651 F.3d 404, 409 (4th Cir. 2011), as support. The Trustee included the following parenthetical: "discussing what it means to 'earn' compensation for purposes of § 507(a)(4) priority treatment." *Id*.

Now, with a settlement on the line, the Trustee argues this exact case supports the Plaintiffs' positions. In doing so, the Trustee tries to tie the totals for weeks 9 and 10 of the first season into the analysis afforded severance pay. The Trustee's attempt to argue its way out of its original position by claiming *Matson* "clear[ly] reject[s] both of the definition [sic] Objectors urge and of proration for fix contractual payments like severance" is what is curious. Because *Matson* does not reject that definition in the context of actual wages—which is what is at issue here—but instead delineates between earning wages and earning severance:

> In ***contrast to wages,*** salaries, and commissions, the triggering events allowing employees to receive "severance pay" lie within the employer's control and its decision both to provide severance compensation and to terminate the employment relationship. Thus, ***employees do not "earn" "severance pay" in exchange for services rendered as they do when they "earn" wages, salaries, and commissions***. Rather, employees receive "severance pay" as compensation for the injury and losses resulting from the employer's decision to terminate the employment relationship. This ordinary understanding of the term "severance pay" is consistent with the stated purpose of the plan in the present case, namely, to assist employees upon termination.

See *Matson*, 651 F.3d at 409 (emphasis added).

The SPAs, however, are not severance agreements. Such a comparison for that purpose is irrelevant for the Court's determination regarding Dundon's and DCP's objections. The SPAs provide no severance pay, do not indicate the players earned anything akin to severance upon termination, and do not contractually modify the determination of when any type of compensation was earned. Moreover, the claims at issue do not seek recourse under any other type of plan, such as an employee benefits plan.

D. **THE COURT ALLOWANCE OF A CLAIM FOR THE REMAINDER OF THE PLAYER CONTRACT TERMS IS INAPPROPRIATE.**

For all the reasons stated in the Trustee's Objection, which are incorporated herein by reference, a settlement that contains an approval of a claim for the remainder of term of all the player contracts is in appropriate. *See* Doc.#270.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED,** Thomas G. Dundon and Dundon Capital Partners, LLC respectfully request the Court sustain their objections and deny the Trustee's Application to Compromise and Settle Pursuant to Federal Bankruptcy Rule of Procedure 9019, and for such other and further relief, at law and in equity, to which they may be entitled.

Respectfully submitted,

**BELL NUNNALLY & MARTIN LLP**

By: */s/ Brent D. Hockaday*
Jeffrey S. Lowenstein
Texas Bar No. 24007574
jlowenstein@bellnunnally.com
Brent D. Hockaday
Texas Bar No. 24071295
bhockaday@bellnunnally.com
2323 Ross Avenue, Suite 1900
Dallas, Texas 75201
214.740.1400 (Telephone)
214.740.1499 (Facsimile)

And

**BRANSCOMB PLLC**

Patrick H. Autry
Texas Bar No. 01447600
pautry@branscomblaw.com
8023 Vantage, Suite 560
San Antonio, Texas 78230
210.598.5400 (Telephone)
210.598.5405 (Facsimile)

**ATTORNEYS FOR DEFENDANT THOMAS G. DUNDON AND DUNDON CAPITAL PARTNERS, LLC**

# CERTIFICATE OF SERVICE

I certify I served the foregoing document by electronic means to the parties of record registered with the court's electronic filing system on October 5, 2021, including those parties to the settlement agreement set forth below.

Jonathon S. Farahi
Boris Treyzon
Abir Cohen Treyzon Sala, LLP
16001 Ventura Blvd., Suite 200
Encino, CA 91436
Email: JFarahi@actslaw.com
Email: btreyzon@actslaw.com

*Counsel for Plaintiffs*

Brian S. Engel
Barrett Daffin Frappier Turner & Engel
3809 Juniper Trace, Suite 205
Austin, TX 78738
Email: brianen@bdfgroup.com

*Counsel for Trustee Randolph N. Osherow*

William N. Radford
Aaron B. Michelsohn
Thompson, Coe, Cousins & Irons, L.L.P.
700 N. Pearl Street, Twenty-Fifth Floor
Dallas, TX 75201
Email: wradford@thompsoncoe.com
Email: amichelsohn@thompsoncoe.com

*Counsel for Defendant Charles Ebersol*

Michael J. Saltz
Jacobson, Russell, Saltz, Nassim & de le Torre
1880 Century Park East, Suite 900
Los Angeles, CA 90067
Email: msaltz@jrsnd.com

*Counsel for Defendant Charles Ebersol*

    */s/ Brent D. Hockaday*
    Brent D. Hockaday